[No. A027529. First Dist., Div. Five. July 1, 1986.]

JOHN KIRBY et al., Plaintiffs and Respondents, v.
PALOS VERDES ESCROW COMPANY, INC.,
Defendant and Appellant.

**COUNSEL**

Franklin K. Lane III for Defendant and Appellant.

Vincent J. DeMartini, Schaefer & Walker and Jeffrey E. Ehlenbach for Plaintiffs and Respondents.

**OPINION**

**LOW, P. J.**—Under the California Uniform Commercial Code, a payor of an assigned note is not liable for making payment to the assignor rather than to the assignee if he has not received actual notice of the assignment. However, where an escrow holder acts as the agent of the payor, the escrow holder breaches a fiduciary duty if after receiving notice of an assignment of the right to escrow funds, it distributes escrow funds to the assignor rather than the assignee.

Defendant Palos Verdes Escrow Company, Inc. (Palos Verdes) appeals from the judgment entered in favor of plaintiffs John and Denise Kirby, awarding them $70,000 which they successfully argued was negligently paid by defendant to their assignor. We affirm.

I

In the fall of 1980, plaintiffs learned of an investment program run by Western Sierra Finance Corporation, doing business as Universal Financial (Universal). Universal would issue its own unsecured promissory note in exchange for a customer's investment and would invest the customer's money by making loans in its own name to third parties secured by second deeds

of trust. The notes and second deeds of trust would then be assigned to the original investor. In connection with this investment plan, Universal promoted its credit processing services, which included payment and pay-off processing and reconveyancing.

The Kirbys invested $70,000 with Universal on October 2 and, in exchange, received Universal's unsecured promissory note bearing 22 percent interest and made payable in 12 months. On October 10, Richard and Wilma Pierce opened an escrow with defendant Palos Verdes for the purchase of real property located in Devore, California. Pending the receipt of permanent financing from the Small Business Administration (SBA), the Pierces borrowed $94,000 on a short-term negotiable note from Universal. The note was secured by a second deed of trust on the Devore property. The Pierces' note, the second deed of trust and Universal's assignment of these documents to the Kirbys as security for Universal's $70,000 note were recorded on October 24.

Palos Verdes ordered a title insurance policy for the Pierces on October 20. When Palos Verdes received the final title insurance policy, one of its officers briefly skimmed the contents and then forwarded it to the Pierces. Funds from the SBA were deposited into the Palos Verdes escrow account during December 1980. At Palos Verdes' request, Universal made demand for payment of the Pierces' note which matured on December 24. The Pierces verbally authorized Palos Verdes to pay off the Universal note, and defendant complied on December 31. Universal recorded a deed of reconveyance of the second deed of trust on January 6, 1981.

In February 1981, plaintiffs made a demand on Universal for payment of their $70,000 investment, but no payment of the principal amount was ever received. Plaintiffs filed suit against defendant alleging its negligent performance of its escrow duties, and Palos Verdes cross-complained for indemnity against the Pierces.

## II

The provisions of article I, chapter 2 of the Civil Code do not apply because the promissory note and trust deed involved fall within the coverage of the California Uniform Commercial Code.[1] (Civ. Code, § 2944.) The CUCC applies "[t]o any transaction . . . which is intended to create a security interest in personal property . . . including . . . instruments . . . and also . . . . [¶] . . . to security interests created by contract including

---

[1]Hereafter, all statutory citations are to the California Uniform Commercial Code (CUCC) unless otherwise indicated.

. . . trust [deeds] . . . ." (§ 9102, subds.. (1)(a), (2).) "The application of [division 9] to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this division does not apply." (§ 9102, subd. (3).)

■ A promissory note is personal property (Civ. Code, §§ 657, 663), and a deed of trust securing such note is a "mere incident of the debt it secures" with no separable, ascertainable market value. (*Domarad* v. *Fisher & Burke, Inc.* (1969) 270 Cal.App.2d 543, 553-554 [76 Cal.Rptr. 529].) ■ Although liens on real property are not covered by the CUCC (§ 9104, subd. (j)), division 9 does apply to security interests in instruments which are themselves secured by interests in real property. (§ 9102, subd. (3); *Riebe* v. *Budget Financial Corp.* (1968) 264 Cal.App.2d 576, 583 [70 Cal.Rptr. 654]; *Landmark Land Co., Inc.* v. *Sprague* (S.D.N.Y. 1981) 529 F.Supp. 971, 977; see also Stewart, *Trust Deed Collateral Loans and the California Commercial Code* (1974) 2 Western St.U. L.Rev. 57.)

This concept is illustrated by the following comment to the CUCC: "The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre.[2] This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage." (See com. 4, 23C West's Ann. CUCC, § 9102 (1986 pocket supp.) p. 86.) ■ In the present case, Universal assigned the Pierce note with its security, the second deed of trust, to the Kirbys as security for its own previously unsecured promissory note. Thus, a security interest was created in the Pierces' debt instrument even though it was secured by a lien on real property, bringing this case within the coverage of the CUCC.

Defendant disputes whether the Kirbys held a perfected or unperfected security interest in the Pierce note and trust deed. ■ Resolution of this issue is unnecessary since the perfection of a security interest affects the creditor's rights as against *third party claimants* to the same interest, not as against the debtor himself. (*In re Transp. Design and Technology, Inc.* (1985) 48 Bnkr. Rep. 635, 639.) In this regard, defendant has misconstrued the provisions of the CUCC and related case law. Our focus here is on the

---

[2]Deeds of trust are analogized to mortgages and are generally governed by the same rules that are applied to mortgages. (*Domarad* v. *Fisher & Burke, Inc., supra,* 270 Cal.App.2d at p. 553.)

debtors' liability on their own note to the assignee of the note and on defendant's duty, as the debtors' agent, to pay the proper party.

 ▀ ██ ██ Once an assignment has been made,[3] "[t]he account debtor is authorized to pay the assignor until the account debtor receives notification that the amount due or to become due has been assigned and that payment is to be made to the assignee." (§ 9318, subd. (3).) The debtor is thus protected by the CUCC if he pays the assignor *before* receiving notice of the assignment.

The CUCC does not specify what type of "notification" is required to effectively inform the debtor of an assignment, but does provide that the failure to "reasonably identify the rights assigned" renders any notification ineffective. (§ 9318, subd. (3).) ██ In order to obligate the debtor to pay the assignee, in lieu of the assignor, the notification must (1) indicate that the account has been assigned, (2) reasonably identify which rights have been assigned, and (3) specifically direct the debtor to pay the assignee. (*Surety Savings & Loan Co.* v. *Kanzig* (1978) 53 Ohio St.2d 108, 112 [372 N.E.2d 602, 605]; *Estate of Haas* v. *Metro-Goldwyn-Mayer, Inc.* (5th Cir. 1980) 617 F.2d 1136, 1139.)[4] The notice contemplated by the CUCC is actual rather than constructive notice (*Matter of Chase Manhattan* v. *State* (1976) 40 N.Y.2d 590, 595 [357 N.E.2d 366, 369]; see also *Matter of Staff Mortg. & Inv. Corp.* (9th Cir. 1977) 550 F.2d 1228, 1230), and the assignee bears the burden of proving that the debtor received adequate notice of the assignment (*Progressive Design, Inc.* v. *Olson Brothers Manuf. Co.* (1978) 200 Neb. 291, 297 [263 N.W.2d 465, 469]).

The record does not reveal any notification of the assignment of Universal's interest to the Kirbys which would satisfy the requirements of section 9318, subdivision (3). The assignment was recorded and such recordation does provide notice for some purposes. (See Civ. Code, § 2934.) However, under the CUCC, mere recordation of the assignment was insufficient notice to obligate defendant to make payment to plaintiffs rather than Universal. Because Palos Verdes did not receive proper notification of the assignment, it is not liable under section 9318.

### III

██ Where the CUCC provisions do not address an issue, general principles of law and equity govern. (§ 1103; *Wolfe* v. *University Nat'l Bank*

---

[3]Universal assigned all rights, title and interest in the note and trust deed to plaintiffs. Defendant challenges the effectiveness of the assignment on the ground that plaintiffs never received possession of the assigned documents. There is no merit to this position, in that "[t]he assignment of a promissory note is fully effective without the transfer of possession of the note itself." (*Kent* v. *Kent* (1935) 6 Cal.App.2d 488, 490 [44 P.2d 445].)

[4]For sample forms to be used in notifying the debtor of an assignment, see California Commercial Law III (Cont.Ed.Bar 1966) sections 7:30, 7:40, 7:42, 7:46, pages 335-351.

(1973) 270 Md. 70, 75 [310 A.2d 558, 561]; *Prince* v. *LeVan* (1971) 486 P.2d 959, 962.) Palos Verdes was not the debtor, but was acting as the debtors' escrow agent. There are no provisions in the CUCC dealing with the operation of an escrow or the duties of an escrow holder. Therefore, we must consider the application of the relevant principles of escrow law.

An escrow is "any transaction wherein one person, for the purpose of effecting the sale, transfer, [or] encumbering, . . . of real or personal property to another person, delivers any written instrument, money, evidence of title . . . or other thing of value to a third person to be held by such third person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by such third person to a grantee, grantor, promisee, promisor, obligee, obligor, . . . or any agent or employee of any of the latter." (Fin. Code, § 17003.) An escrow agent or holder is any person who receives escrows for deposit or delivery. (Fin. Code, § 17004.)

█ Defendant acted as the escrow agent for escrow number 2-2032 in the purchase of the Devore property. All transactions handled by defendant were related in some manner to the transfer of title to the Pierces through that escrow account. Defendant maintains that the escrow was "closed" in October 1980 when title transferred to the Pierces, and that its status as escrow holder terminated at that time. Even after the date of title transfer, however, defendant received the Pierces' long-term financing funds which were deposited to the same escrow account. All payments made on behalf of the Pierces were drawn from that account as well. The receipt of funds from the Pierces and the delivery of such funds to third parties on the Pierces' behalf indicate that defendant continued to act as an escrow agent within the meaning of Financial Code sections 17003 and 17004.

█ An escrow holder is the limited agent and fiduciary of all parties to an escrow. (*Rianda* v. *San Benito Title Guar. Co.* (1950) 35 Cal.2d 170, 173 [217 P.2d 25]; *Colonial Savings & L. Assn.* v. *Redwood Empire Title Co.* (1965) 236 Cal.App.2d 186, 190 [46 Cal.Rptr. 16].) The agency is limited because the escrow agent only represents his principals insofar as he carries out the escrow instructions. (*Lee* v. *Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 164 [70 Cal.Rptr. 378].) █ Here, Palos Verdes was the limited agent of the Pierces and Universal who were original parties to the escrow.

██, █ An escrow holder has a fiduciary duty "to communicate to his principal knowledge acquired in the course of his agency with respect to material facts which might affect the principal's decision as to a pending transaction, particularly where . . . he knows that the principal is looking

to him for protection as to those very facts of which he has knowledge."
(*Contini* v. *Western Title Ins. Co.* (1974) 40 Cal.App.3d 536, 547 [115
Cal.Rptr. 257]; *Spaziani* v. *Millar* (1963) 215 Cal.App.2d 667, 684 [30
Cal.Rptr. 658].) A breach of this fiduciary duty or the failure to exercise
reasonable skill and diligence in carrying out the escrow instructions subjects
the escrow holder to liability. (*Axley* v. *Transamerica Title Ins. Co.* (1978)
88 Cal.App.3d 1, 9 [151 Cal.Rptr. 570].) Likewise, the escrow agent is
liable for any loss caused by his failure to strictly comply with his principal's
instructions or by his disposal of escrow property in violation of those
instructions. (*Colonial Savings & L. Assn.* v. *Redwood Empire Title Co.*,
*supra*, 236 Cal.App.2d at pp. 190-191.)

The trial court found that defendant "had notice of the assignment of the
note and deed of trust to plaintiffs before [it] made the payment. . . ."
 It is the duty of this court to uphold the trial court's finding if it is
supported by substantial evidence in the record. (*Swanson* v. *Skiff* (1979)
92 Cal.App.3d 805, 808 [155 Cal.Rptr. 280].) The facts support
the trial court's finding. Defendant's officer, Ms. Kanady, testified that the
title insurance policy, which reflected the recordation of the assignment,
was ordered by Palos Verdes during the escrow period. When the policy
was received at defendant's office, it was "checked" and then forwarded
to the Pierces. Defendant maintains that the policy was only cursorily
reviewed before being forwarded to the Pierces and that it is "unrealistic
and unfair" to charge it with knowledge of the contents of the policy.
Defendant was acting in an escrow agent's capacity at the time the policy
was received. It would not make sense to allow an escrow agent to ignore
the contents of the policy. Rather, it was incumbent on Palos Verdes to
review any documents relative to the escrow, particularly a document which
would reveal "the status of the lien holders [*sic*] against the Devore
property," to discover any potential risks to its principals. As the escrow
agent handling the purchase of the Devore property, defendant had the duty
to discover information relating to the transfer of title and to inform its
principals of facts which materially affected their interest in that property
or in the escrow funds. (See *Contini* v. *Western Title Ins. Co.*, *supra*, 40
Cal.App.3d at pp. 546-547.) There is substantial evidence charging de-
fendant with constructive notice of the contents of the title insurance policy
and, therefore, with knowledge of the assignment.

Receipt of notice of the assignment was equivalent to the receipt of new
escrow instructions regarding the party to be paid. (*Builders' Control Service
of No. Cal., Inc.* v. *North American Title Guar. Co.* (1962) 205 Cal.App.2d
68, 74 [22 Cal.Rptr. 712].) Such "new" instructions conflicted with the
Pierces' verbal instructions to pay Universal. This conflict should have
alerted defendant to a potential problem in paying Universal rather than the

Kirbys, and vice versa. As the escrow holder faced with conflicting instructions, Palos Verdes had the duty to delay payment of escrow funds until such time as the proper payee was identified. (*Diaz* v. *United California Bank* (1977) 71 Cal.App.3d 161, 171 [139 Cal.Rptr. 314].) In fact, the escrow instructions expressly authorized defendant to withhold payment of escrow funds in the case of conflicting instructions: "In the event of conflicting demands on the escrow holder by the principals, this escrow may . . . deposit any and all funds in questions [*sic*] with the court that would have jurisdiction over the matter, and the escrow holder is relieved of any further responsibility in connection with the escrow."

Notwithstanding the fact that payment to Universal would have been proper under the provisions of the CUCC, that act represented a violation of defendant's overriding duty as an escrow agent. The provisions of real estate law which delineate an escrow holder's responsibilities are properly applied where the CUCC does not itself set forth rules regarding the operation of an escrow. Palos Verdes may be held accountable for the loss it occasioned by negligently paying escrow funds to the wrong party.

Affirmed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied July 30, 1986.