[No. S097344. Mar. 7, 2002.]

SUMMIT FINANCIAL HOLDINGS, LTD., Plaintiff and Respondent, v.
CONTINENTAL LAWYERS TITLE COMPANY, Defendant and
Appellant.

**COUNSEL**

Wolf, Rifkin & Shapiro and Marc E. Rohatiner for Defendant and Appellant.

Billet, Kaplan & Dawley and Terry S. Kaplan for California Land Title Association as Amicus Curiae on behalf of Defendant and Appellant.

Stephan, Oringher, Richman & Theodora, Harry W. R. Chamberlain II, Robert M. Dato; Robie & Matthai, Edith M. Matthai and Pamela E. Dunn for American Insurance Association and Association of Southern California Defense Counsel as Amici Curiae on behalf of Defendant and Appellant.

Doumani & Grandon, Grandon & Associates, Robert M. Grandon; Callahan & Blaine and Jim P. Mahacek for Plaintiff and Respondent.

**OPINION**

**BROWN, J.**—The question presented by this case is whether an escrow holder owes a duty of care to a nonparty to the escrow based on an

assignment to that nonparty by another nonparty to the escrow. We answer this question in the negative.

The complicated factual background of this case will be presented more fully below, but in brief, the question presented arises under the following circumstances: Dr. John Furnish, the maker of a promissory note secured by a deed of trust on real property in Corona Del Mar, refinanced his secured obligations by obtaining a new loan from a new lender, a portion of the proceeds of which was to pay the earlier note in full. Defendant Continental Lawyers Title Company (CLTC) provided escrow services for the refinance transaction and was instructed by the parties to the escrow to pay the note by issuing a check to Talbert Financial (Talbert). CLTC followed that instruction on closing of the refinance transaction. In this lawsuit, plaintiff Summit Financial Holdings, Ltd. (Summit) sued CLTC for negligence. Summit contended that in the refinance transaction CLTC should have paid the note by issuing a check to Summit rather than Talbert because CLTC knew Talbert had assigned its rights in the note and deed of trust to Summit. *Neither the assignor, Talbert, nor the assignee, Summit, was party to the escrow.* Nevertheless, the trial court, relying on *Kirby v. Palos Verdes Escrow Co.* (1986) 183 Cal.App.3d 57 [227 Cal.Rptr. 785] (*Kirby*), concluded that CLTC owed a duty of care to Summit, and that CLTC breached that duty because CLTC, with knowledge of the assignment from Talbert to Summit, paid Talbert rather than Summit. The trial court awarded judgment to Summit against CLTC for negligence, but the Court of Appeal reversed, holding that CLTC owed no duty of care to Summit.

We agree with the Court of Appeal and affirm its judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND*

### A.  *The Loan*

In August 1994 Furnish borrowed $425,000 from Talbert, and signed the note payable to Talbert. The note was secured by the deed of trust on the property. Both the note and the payment book given to Furnish required him

---

*We adopt the Court of Appeal's statement of the factual and procedural background as part I of our opinion. No party petitioned for rehearing to suggest that the Court of Appeal omitted or misstated any material fact. (Cal. Rules of Court, rule 29(b)(2).) Brackets enclosing material (other than parallel citations) denote insertions or additions by this court.

to pay the monthly installments on the note to Talbert at Talbert's Orange, California, address.[1]

At the same time the deed of trust was recorded, a document entitled "Assignment of Deed of Trust" was recorded that assigned the beneficial interest under the note and deed of trust from Talbert to Summit. However, neither Talbert nor Summit gave Furnish notice of the assignment, as[, according to Furnish, was] required by Civil Code section 2937.[2]

B. *The Refinance*

In September 1995 Furnish obtained a new loan from Dundrel Securities (Dundrel) that was used in part to pay the note. Furnish and Dundrel employed Beverly Hills Escrow (BHE) to handle the refinancing transaction, and CLTC acted as an escrow holder in connection with issuing the title insurance for the new deed of trust securing the new note payable to Dundrel. [Neither Talbert nor Summit was a party to the BHE escrow or the CLTC escrow.]

CLTC prepared a preliminary title report noting (at item 6) that the property was encumbered by a deed of trust securing the Talbert note, and that an assignment of the note and deed of trust from Talbert to Summit had been recorded. BHE thereafter obtained a note payoff demand from Talbert specifying the outstanding balance to be paid to Talbert to fully pay the note. On September 8, 1995, BHE forwarded Talbert's payoff demand to CLTC and identified it as the "Demand for item 6 on the Preliminary Title Report."

On close of the refinancing transaction, CLTC paid Talbert from funds deposited with CLTC by Dundrel in accordance with the payoff demand and BHE's instructions. Summit did not receive these funds from Talbert.

C. *The Legal Proceedings*

In February 1997 Furnish filed for protection under chapter 11 of the United States Bankruptcy Code (11 U.S.C.), and in April 1997 the bankruptcy court entered an order for sale of the property free and clear of all liens. The order directed that the proceeds of the sale be used to pay the amounts owed the first trust deed holder, Dundrel, and amounts owed to another secured creditor, and that any purported liens on the property held

---

[1] Under the terms of the note, the first six monthly installments were impounded. Furnish paid three other monthly installments to Talbert in June, July and August 1995. Other than the impounded amounts and these three payments, Furnish made no payments on the note.

[2] All statutory references are to the Civil Code unless otherwise specified.

by other parties, including Summit, would attach to the remaining proceeds of the sale.

In July 1997 Furnish moved in the bankruptcy court for an order disallowing Summit's lien claim on the remaining proceeds from the sale of the property. Furnish argued the amount he paid Talbert in 1995 in the refinance transaction fully extinguished Furnish's obligations under the note. He established that he never received notice of the assignment of the deed of trust [and contended that notice was] required by section 2937, subdivision (d), and [that] under section 2937, subdivision (f), a debtor's payment to the prior note holder before receiving notice of the assignment pro tanto extinguishes the underlying obligation. The payment to Talbert therefore[, Furnish argued,] fully extinguished the note. Summit opposed the motion, arguing that (1) the recorded assignment of the note and deed of trust was adequate to provide constructive notice of the transfer from Talbert to Summit, and (2) in any event Furnish received a notice that complied with section 2937, subdivision (d). The bankruptcy court concluded Furnish was not given the notice required by section 2937, subdivision (d) and the payment to Talbert extinguished the note under section 2937, subdivision (f). It therefore disallowed Summit's lien claim on the remaining proceeds for the sale of the property.[3]

In this proceeding, Summit sought recovery from CLTC of the note payment CLTC made to Talbert, contending that CLTC was negligent by making the note payment to Talbert rather than to Summit. The trial court concluded *Kirby* was controlling and that CLTC owed a duty of care to Summit. The trial court further found that CLTC was negligent [and] breached its duty of care to Summit, and [that] CLTC's negligence was a proximate cause of Summit's injury. Accordingly, the trial court entered judgment for damages in favor of Summit against CLTC.[4]

[The Court of Appeal reversed on the ground that Summit, being a stranger to the escrow, was not owed a duty of care by CLTC.]

---

[3][Both the bankruptcy court and the Court of Appeal assumed that section 2937 requires that a borrower be given notice of the *assignment* of the debt. However, by its terms the section requires only that a borrower be given notice of *transfer of servicing* of a debt on one to four residential units. Commentary on the Court of Appeal's opinion raises the question whether section 2937 does apply to assignment, as well as transfer of servicing, of a debt. (See Bernhardt & Whitman, *Escrow* (Cont.Ed.Bar 2001) 24 Real Prop. L.Rptr. 160.) That is a question we need not and do not reach here. In this case, the borrower, Furnish, was found free of liability by the bankruptcy court and the parties no longer dispute that issue.]

[4]The trial court reduced the damage award sought by Summit because it concluded Summit was contributorily negligent.

## II. DISCUSSION

"An escrow involves the deposit of documents and/or money with a third party to be delivered on the occurrence of some condition." (3 Miller & Starr, Cal. Real Estate (3d ed. 1989) § 6:1, pp. 2-3 (rev. 9/00); see Fin. Code, § 17003, subd. (a).) An escrow holder is an agent and fiduciary of the parties to the escrow. (*Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 534 [25 Cal.Rptr. 65, 375 P.2d 33] (*Amen*); *Rianda v. San Benito Title Guar. Co.* (1950) 35 Cal.2d 170, 173 [217 P.2d 25].) The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow. (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 674 [86 Cal.Rptr.2d 490] (*Vournas*); *Schaefer v. Manufacturers Bank* (1980) 104 Cal.App.3d 70, 77 [163 Cal.Rptr. 402] (*Schaefer*); *Blackburn v. McCoy* (1934) 1 Cal.App.2d 648, 655 [37 P.2d 153].) If the escrow holder fails to carry out an instruction it has contracted to perform, the injured party has a cause of action for breach of contract. (*Amen*, at p. 532.)

In delimiting the scope of an escrow holder's fiduciary duties, then, we start from the principle that "[a]n escrow holder must comply strictly with the instructions of the parties. [Citations.]" (*Amen, supra*, 58 Cal.2d at p. 531.) On the other hand, an escrow holder "has no general duty to police the affairs of its depositors"; rather, an escrow holder's obligations are "limited to faithful compliance with [the depositors'] instructions." (*Claussen v. First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 435-436 [230 Cal.Rptr. 749]; see, e.g., *Vournas, supra*, 73 Cal.App.4th at p. 674; *Romo v. Stewart Title of California* (1995) 35 Cal.App.4th 1609, 1618, fn. 9 [42 Cal.Rptr.2d 414]; *Schaefer, supra*, 104 Cal.App.3d at pp. 77-78; *Axley v. Transamerica Title Ins. Co.* (1978) 88 Cal.App.3d 1, 9 [151 Cal.Rptr. 570].) Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions. (*Lee v. Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 162 [70 Cal.Rptr. 378]; 3 Miller & Starr, Cal. Real Estate, *supra*, § 6:26, p. 68.) Here, even though the escrow holder, CLTC, was aware of the assignment from Talbert to Summit, there is no evidence CLTC was aware of any collusion or fraud in the fund disbursement that would have adversely affected any party to the escrow.

However, because CLTC knew Talbert had assigned its rights in the note and deed of trust to Summit, Summit contends CLTC breached both a *fiduciary* duty and a *tort* duty to Summit by paying Talbert. We conclude neither contention has merit.

## A. *The Asserted Fiduciary Duty: Kirby*

In contending that the escrow holder here, CLTC, owed a duty of care to Summit, even though neither Talbert nor Summit were parties to the escrow, Summit relies upon *Kirby, supra,* 183 Cal.App.3d 57. In *Kirby,* the Pierces opened an escrow with Palos Verdes Escrow Company, Inc. (Palos Verdes), for the purchase of certain real property. While awaiting permanent financing from the Small Business Administration (SBA), the Pierces took out a short-term loan from Universal Financial (Universal), which loan was secured by a second deed of trust on the property. Universal then assigned the note and the deed of trust to the Kirbys, and the assignment was recorded. After funds from the SBA were deposited into escrow, Universal made a demand on Palos Verdes for payment of the Pierces' note, and the Pierces orally authorized payment. Because one of its officers had reviewed the title insurance policy on the property before forwarding it to the Pierces, Palos Verdes had constructive notice of Universal's assignment to the Kirbys. Nevertheless, Palos Verdes made the payment to Universal. When the Kirbys demanded payment from Universal and Universal failed to pay them, the Kirbys filed suit against Palos Verdes on the theory it performed its escrow duties negligently by paying Universal rather than the Kirbys. The Kirbys prevailed in the trial court, and the Court of Appeal affirmed. (*Kirby,* at pp. 60-61.)

*Kirby* began its analysis by reviewing the familiar principles recited above. (*Kirby, supra,* 183 Cal.App.3d at pp. 64-65.) However, after acknowledging that the agency created by an escrow is limited to the obligation to carry out the instructions of the parties to the escrow, and that an escrow holder is liable to the parties insofar as it fails to carry out the instructions it has contracted to perform, *Kirby* held that Palos Verdes was liable to the Kirbys, who were strangers to the escrow, precisely because it did carry out the instructions of a party—the Pierces. The rationale *Kirby* gave for this anomalous conclusion was that "[r]eceipt of notice of the assignment was equivalent to the receipt of new escrow instructions regarding the party to be paid. (*Builders' Control Service of No. Cal., Inc.* v. *North American Title Guar. Co.* (1962) 205 Cal.App.2d 68, 74 [22 Cal.Rptr. 712].) Such 'new' instructions conflicted with the Pierces' verbal instructions to pay Universal. This conflict should have alerted defendant to a potential problem in paying Universal rather than the Kirbys, and vice versa. As the escrow holder faced with conflicting instructions, Palos Verdes had the duty to delay payment of escrow funds until such time as the proper payee was identified. [Citation.]" (*Kirby,* at pp. 65-66.)

As the Court of Appeal in the present case observed, *Kirby* appears to be the only California case that holds an escrow holder can be liable to

strangers to the escrow for injuries allegedly caused by the escrow holder following its principals' instructions. We agree with the Court of Appeal that *Kirby*'s analysis for its novel legal conclusion is not convincing. "*Kirby*'s holding rested on its reading of *Builders' Control Service* that (1) knowledge of an escrow holder that a nonparty distributee of funds from the escrow has made an assignment of the right to receive those funds is deemed an amendment to the escrow instructions by the parties to the escrow, and (2) an escrow holder who follows the parties' instructions rather than the 'deemed amended' instructions is exposed to liability even though its principals suffer no injury from the fact the escrow holder followed its principals' instructions. [¶] Kirby's holding is flawed because *Builders' Control Service* does not stand for either legal proposition."

In *Builders' Control Service*, a lender agreed to fund an owner-builder's construction of homes, and to ensure that the loan funds would actually be used to pay the construction costs, the lender deposited the funds with the plaintiff fund control agent. The parties to the loan also agreed that the owner-builder would assign the proceeds from the sale of the newly constructed homes to the fund control agent as an additional source of funds to pay the construction costs. The defendant title company acted as an escrow holder for the proceeds of the home sales, and, because it had received a copy of the assignment and had recorded it, the title company knew that the owner-builder had assigned the proceeds of the sales to the fund control agent. Nevertheless, the title company assertedly made deductions from the sales proceeds in violation of the terms of the assignment. (*Builders' Control Service of No. Cal., Inc. v. North American Title Guar. Co., supra*, 205 Cal.App.2d at pp. 70-72 (*Builders' Control Service*).) In *Builders' Control Service*, then, the question was whether the defendant title company, acting in its capacity as an escrow holder and knowing that its *principal* had assigned the sales proceeds held by it, was liable to the plaintiff fund control agent for violating the terms of the assignment.

As the Court of Appeal in the present case correctly observed: "Although the *Builders' Control Service* court concluded the escrow holder was obligated to disburse the funds to the owner-builder's assignee, the principles it applied have no application to whether an escrow holder owes duties to a nonparty based on an assignment made by [one] stranger to the escrow to [another] stranger to the escrow. The *Builders' Control Service* court first noted that when a home sale escrow closed, the escrow holder held the sales proceeds as agent for the owner-builder principal. The *Builders' Control Service* court then cited section 2344 for the rule that, when a principal has assigned funds to a third party, an agent for that principal who comes into

possession of those funds must surrender them to the third party. (205 Cal.App.2d at p. 73.) Thus, *Builders' Control Service* stands for the proposition only that an agent's obligation to disburse proceeds held by the agent for its principal is coextensive with the principal's obligation to disburse those proceeds to the assignee. [Fn. omitted.]"

We agree with the Court of Appeal here that "*Kirby* misread *Builders' Control Service*. *Builders' Control Service* holds only that an agent's knowledge of an assignment by its principal obligates the agent to honor the principal's assignment [fn. omitted]; *Kirby* transformed that obligation, which is founded in the law of agency, into a duty owed to honor contracts made by creditors of the principal even though the escrow holder had no agency relationship with the creditor [fn. omitted]." The *Builders' Control Service* court did say that "receipt of notice [of an assignment] is tantamount to new instructions." (*Builders' Control Service, supra*, 205 Cal.App.2d at p. 74.) However, under the facts of that case, the statement meant no more than that a party to an escrow may issue new instructions to the escrow holder in the form of an assignment. As the Court of Appeal here observed: "*Kirby*'s citation to *Builders' Control Service* as holding that receipt of notice of the assignment was equivalent to the receipt of new escrow instructions regarding the party to be paid demonstrates *Kirby*'s misreading of *Builders' Control Service*. In the context of *Builders' Control Service*, the agent's receipt of notice of the assignment could be deemed the equivalent of a new instruction regarding the party to be paid because the assignment was made by the owner-builder, a party to the escrow entitled to give instructions to the escrow holder. However, *Kirby* transmuted that agency concept into a holding that transactions by strangers to an escrow can supersede and amend the instructions given by the parties to the escrow. Nothing in *Builders' Control Service* supports that remarkable conclusion."[5]

○

For the reasons stated, *Kirby v. Palos Verdes Escrow Co., supra*, 183 Cal.App.3d 57, is disapproved insofar as it is inconsistent with the views expressed herein.

---

[5]*Builders' Control Service* relies on two cases—*Baumgarten v. California Pac. T. & T. Co.* (1932) 127 Cal.App. 649 and *Roberts v. Carter & Potruch* (1956) 140 Cal.App.2d 370 [295 P.2d 515]—for the proposition that once funds in escrow have been assigned, and the escrow holder notified of the assignment, the escrow holder must observe the assignment. (*Builders' Control Service, supra*, 205 Cal.App.2d at pp. 73-74.) Like *Builders' Control Service*, both *Baumgarten* and *Roberts* involve assignments by *parties* to escrows. (*Baumgarten*, at pp. 653-656; *Roberts*, at pp. 371-372.)

## B. *The Asserted Tort Duty: Section 1714, Subdivision (a)*

In the alternative, relying upon section 1714, subdivision (a),[6] Summit argues the judgment against CLTC was proper because all persons are liable for injuries caused by their negligent conduct. However, the threshold question in an action for negligence is whether the defendant owed the plaintiff a duty to use care (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60), and the "[r]ecognition of a duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception, not the rule, in negligence law" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 58 [77 Cal.Rptr.2d 709, 960 P.2d 513]).

In *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358], we stated: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm. [Citations.]"

Applying the six-factor *Biakanja* test to the facts of this case, the Court of Appeal concluded there was no reason to depart from "the general rule that an escrow holder incurs no liability for failing to do something not required by the terms of the escrow or for a loss caused by following the escrow instructions. (*Axley v. Transamerica Title Ins. Co., supra,* 88 Cal.App.3d at p. 9)." We find the analysis of the Court of Appeal persuasive. "First, the transaction CLTC undertook was not intended to affect or benefit Summit. CLTC was engaged by Dundrel and Furnish to assist them in closing a loan transaction between Dundrel and Furnish, and any impact that transaction may have had on Summit was collateral to the primary purpose of the escrow. Second, although the certainty of injury element is satisfied because the evidence supports the conclusion that Summit did not receive the funds paid to Talbert, the foreseeability of harm element does not support a duty because there is no suggestion CLTC could have foreseen that

---

[6]Section 1714, subdivision (a) provides: "Every one is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the Title on Compensatory Relief."

Talbert would not disburse the funds to Summit.[7]" With regard to the moral blame factor, compliance by CLTC with its fiduciary duty to follow the instructions of the parties to the escrow was not blameworthy and is, instead, a policy consideration that militates against concluding the company had a tort duty in this case. Finally, there is not a sufficiently close connection between the payment of Talbert and the injury suffered by Summit to warrant imposition of a duty of care. Although the payment to Talbert was found by the bankruptcy court to have extinguished Furnish's obligation under the note, Summit's injury was caused by Talbert's breach of its contractual obligation to Summit.

## CONCLUSION

We decline to adopt a rule that would, by subjecting an escrow holder to conflicting obligations, undermine a valuable business procedure, and we therefore affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., concurred.

**WERDEGAR, J.,** Concurring.—I join the majority in concluding that defendant Continental Lawyers Title Company (CLTC) owed no duty, as a fiduciary or under the law of negligence, to make the loan payoff to plaintiff Summit Financial Holdings, Ltd. (Summit), rather than to the original lender, Talbert Financial (Talbert). I have signed the majority opinion because I understand its holding as limited to this and similar fact situations and, in particular, as not deciding whether an escrow holder might breach its fiduciary duty to *a party* to the escrow by paying off, pursuant to instructions, an original lender who had assigned and transferred the note and deed of trust to another.

Under Civil Code section 2935, paying the outstanding amount of a loan secured by a deed of trust to the original lender does not extinguish the debt if an assignment of the loan has been recorded and the original lender no longer holds the promissory note. (*Rodgers v. Peckham* (1898) 120 Cal. 238, 242 [52 P. 483].) As the majority observes, the Legislature may, in Civil Code section 2937, have intended to change this rule as to small residential properties and require personal notice to the borrower, though

---

[7]"In arguing for imposition of a duty, Summit emphasizes that CLTC knew Summit was the assignee of the note and deed of trust and knew or should have foreseen that payment to Talbert would injure Summit. However, foreseeability of financial injury to third persons is not alone sufficient to impose liability for negligent conduct. (*Quelimane Co. v. Stewart Title Guaranty Co., supra*, 19 Cal.4th 26, 57-58.)"

that statute speaks only of transfers of servicing of indebtedness, not of assignments. (Maj. opn., *ante*, at p. 710, fn. 3; see Bernhardt & Whitman, *Escrow* (Cont.Ed.Bar 2001) 24 Real Prop. L.Rptr. 160.) To the extent the rule of Civil Code section 2935 stands unmodified, however, a borrower could remain indebted to an assignee holding the note even after paying off the original lender in full, and thus be liable for double payment or face foreclosure on the security. Where the misdirected payment is made by and through an escrow agent, in the face of recorded notice of the assignment, the escrow agent might well be held to have breached its duty to the borrower. That such a misdirected payoff was made pursuant to the escrow instructions—typically drafted by the escrow agent itself or by the new lender, rather than by the borrower—would not necessarily excuse or negate the breach.

In short, a borrower subjected to double payment of a loan because the escrow agent paid the wrong party might be able to recover from the escrow agent in the amount of the payment or other damages, even if the escrow agent was only following its instructions. In the present case, however, we need not face this question, as here a federal bankruptcy court and the appellate court below held the payment to Talbert extinguished the borrower's debt, and the parties no longer dispute that point.

Also properly left unaddressed in the majority opinion is Summit's perfunctory claim that CLTC is liable for violating Civil Code section 2941, which governs the reconveyance of a deed of trust when the obligation it secures has been satisfied. Summit neither explains in what respect CLTC violated Civil Code section 2941 nor cites record evidence showing a violation. But Civil Code section 2941 does provide for a title company's liability under some circumstances (see *id.*, subd. (b)(6)), and the majority opinion, as I read it, does not preclude such liability in a proper case.

I concur in the majority opinion, which correctly resolves the narrow question presented by the parties to this case.

Moreno, J., concurred.

Respondent's petition for a rehearing was denied May 15, 2002, and the opinion was modified to read as printed above.