Filed 4/24/13  TSF 53419 v. Fidelity Nat. Title Ins. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TSF 53419, LLC,<br><br>　　　　Plaintiff and Appellant,<br><br>　　v.<br><br>FIDELITY NATIONAL TITLE<br>INSURANCE COMPANY,<br><br>　　　　Defendant and Respondent. | B232445<br><br>(Los Angeles County<br>Super. Ct. No. PC045484) |

　　　　APPEAL from a judgment of the Superior Court of Los Angeles County, Randy Rhodes, Judge.  Affirmed.

　　　　Hacker Law Group and Jeffrey A. Hacker for Plaintiff and Appellant.

　　　　Fidelity National Law Group, Jordan Trachtenberg and Amy J. Cooper for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff and appellant TSF 53419, LLC (TSF) appeals an order granting the motion for summary judgment of defendant and respondent Fidelity National Title Insurance Company (Fidelity).[1] The gravamen of TSF's lawsuit is that it is entitled to collect monies due under a promissory note executed by Trimark Pacfic-Valle Di Oro, LLC (Trimark). TSF sued numerous parties, including Trimark and Fidelity, to recover the sum due under the promissory note.

TSF's only cause of action against Fidelity is for negligence. Fidelity served as the escrow holder and title insurer in the sale of nine condominiums by Trimark to various individuals (Homeowners).[2] TSF alleges that Fidelity negligently transferred title to the condominium units to the Homeowners and funds to Trimark without verifying that Trimark's debt to TSF was fully paid and obtaining reconveyances of the promissory note and related deed of trust from TSF. We shall conclude that the trial court correctly granted Fidelity's motion for summary judgment because Fidelity did not owe a duty of care to TSF.

## FACTUTAL AND PROCEDURAL BACKGROUND

1. *Trimark's Purchase of the TSF Parcel*

On June 21, 2004, pursuant to a purchase and sale agreement (Purchase Agreement), TSF sold vacant land in Santa Clarita (TSF Parcel) to Trimark Pacific Homes, L.P. (Trimark L.P.). The purchase price was $3.8 million. Trimark L.P. later assigned all of its rights and obligations under the Purchase Agreement to Trimark.

Trimark L.P. and its affiliate Trimark financed the purchase of the TSF Parcel with a $3.7 million loan from TSF memorialized by a promissory note (the Note) and

---

[1] As we explain in footnote 5 *post*, we treat this order as a judgment.

[2] Homeowners are Phyllis A. Pacella, Rika E. Wakelin, Edna Villalvazo, Guillermo Villalvazo, Anna S. East, Jeremy M. East, Jason R. Fontes, Breanne A. Schmidt, Debra N. Black, Jason T. Black, Cynthia D. Kloe, Suzanne Zelenak, Gary Sager, Shad G. Sager, Hallie Sager, Brandon M. Golphenee, Ernie R. Golphenee, and Toni T. Golphenee.

secured by a deed of trust (the Deed of Trust).  Trimark was the maker of the Note; TSF was the holder.  The Note, dated April 15, 2005, provides that Trimark shall pay TSF the principal balance of $3.7 million, plus 10 percent annual interest, within four years, i.e. by April 14, 2009.  Alternatively, under both the Note and the Purchase Agreement, Trimark could pay off its debt to TSF by transferring eight designated "finished" condominium units to TSF.

The Deed of Trust, dated April 15, 2005 and recorded on April 19, 2005, granted TSF a lien on the TSF Parcel.  The legal description of the TSF Parcel was set forth in Exhibit 1 to the Deed of Trust, which stated the applicable metes and bounds of the land, without any reference to condominium units.

2.      *Trimark's Purchase of the VDO Parcel*

On November 5, 2004, VDO 53419 LLC (VDO) sold a parcel of vacant land to Trimark (VDO Parcel) that was adjacent to the TSF Parcel.  TSF and VDO were affiliated entities in that the members of each company were the same, but the percentages of ownership were different.

3.      *The Development of the Condominium Project*

Trimark purchased the TSF Parcel and VDO Parcel with the intention of creating a condominium development on the contiguous properties.  In May 2005, Trimark requested TSF to subordinate the Note and Deed of Trust to a new acquisition and development loan in the amount of $14,430,000 from Bank of the West (Bank).  In August 2005, TSF recorded a modification of deed of trust (Modification), whereby Trimark's debt to TSF was subordinated under a subordination agreement between TSF and Bank.  The Modification did not change the due date or payment obligations under the Note.  Exhibit A to the Modification set forth the same legal description of the TSF Parcel as Exhibit 1 to the Deed of Trust.

In September 2005, Trimark recorded the final subdivision map for Tract No. 53419 in the official records of Los Angeles County.  Tract No. 53419 was comprised of the TSF Parcel and VDO Parcel.

3

In April 2007, Trimark requested TSF to subordinate the Note and Deed of Trust to a new construction loan from Bank in the amount of $23,520,000. TSF agreed to the subordination. In April 2008, Trimark recorded condominium plans subdividing Tract No. 53419 into 111 condominium units. The project would be known as the Valle Di Oro subdivision. Ultimately, only 22 of the 111 condominium units were built.

4.     *The Homeowners Purchase Nine Condominiums*

Between June 2008 and September 2008, the Homeowners purchased nine condominium units in the Valle Di Oro subdivision from Trimark. According to David Knell, a professional land surveyor, all of the Homeowners' units were built on the VDO Parcel and none of them were built on the TSF Parcel.[3] Fidelity concedes, however, that "some portion of the common area for the project may have been located on the TSF Parcel."

Fidelity served as the escrow holder in each of the nine transactions. Its duties and obligations in each transaction were memorialized by a document entitled, "Joint Purchase and Sale Agreement Receipt for Deposit and Escrow Instructions." TSF was not mentioned in these documents and was not a party to the escrows. Indeed, in sworn declarations, the Homeowners claim that at the time they purchased their respective condominium units, they had never heard of TSF and had no knowledge that TSF claimed any interest in their property.

---

[3]     TSF does not dispute that the physical location of each of the condominium units is within the metes and bounds of the VDO Parcel set forth in the Deed of Trust and Modification. But it contends that both documents encumber "the entirety of the real property comprising Tract [No.] 53419 by referencing their Assessor Parcel Numbers."

4

On September 23, 2008, TSF's counsel sent a letter to Fidelity and Trimark advising them not to transfer title to any condominiums to third parties without TSF's consent. This letter was sent after eight of the nine condominiums were sold to the Homeowners. Trimark and Fidelity nonetheless completed the sale of the ninth condominium.

Fidelity prepared closing statements for each of the nine transactions. These statements described in detail the money received and disbursed by Fidelity in its capacity as an escrow holder. In each transaction, after making certain payments for taxes, homeowners' association fees and the like, Fidelity disbursed the funds held in escrow to Trimark and Bank. None of the funds were disbursed to TSF. Each statement also indicated that Fidelity received a payment for serving as a title insurance company.

5.      *Notice of Default on the Note*

On April 14, 2009, TSF served Trimark with a notice stating that Trimark had defaulted on the Note. TSF claims that as of September 2008, Trimark had defaulted under the Note for a variety of reasons, including "failing to notify TSF of the closings on the Units [sold to the Homeowners] or obtaining partial reconveyances for them."[4]

6.      *Procedural History in the Trial Court*

On May 21, 2009, TSF commenced this action in the trial court by filing a complaint. In December 2009, TSF filed its operative first amended complaint (FAC).

The FAC set forth four causes of action against Trimark and affiliated entities (Trimark Defendants), including a claim for breach of the Note. It also stated a cause of action against Homeowners for judicial foreclosure, as well as a cause of action for "alter ego" against West Coast Housing Partners, LLC, Steven Kessler and the Trimark Defendants.

---

[4]      We do not decide whether Trimark was in default as of September 2008.

5

The only cause of action stated in the FAC against Fidelity was for negligence. The FAC alleged that Fidelity breached its duty of care to TSF by transferring the nine condominium units from Trimark to the Homeowners without first obtaining TSF's consent, and without verifying that no funds were owing to TSF or obtaining reconveyances from TSF.

On or about June 11, 2010, Homeowners filed a motion for summary judgment. In their brief supporting the motion, the Homeowners argued that there was no basis for TSF to foreclose on their condominium units because the units were not encumbered by the Deed of Trust.

On or about June 18, 2010, Fidelity filed a motion for summary judgment. In its motion, Fidelity argued that it had no duty of care to TSF because TSF did not have an encumbrance on any of the condominium units purchased by the Homeowners. Fidelity also argued that it owed no duty to TSF because TSF was not a party to the escrows opened in connection with the sale of condominium units to the Homeowners.

On August 25, 2010, the trial court issued an order granting the Homeowners' motion for summary judgment. The court found that the Deed of Trust "does not encumber the land upon which [Homeowners'] condo units are located," and thus TSF "does not have the right to foreclose on the units." On September 14, 2010, based on its order granting the Homeowners' motion, the trial court entered judgment in favor of Homeowners. TSF filed a timely appeal of the judgment.

In the meantime, the hearing on Fidelity's motion for summary judgment was postponed. On February 18, 2011, pursuant to a stipulation between the parties, the trial court granted Fidelity's motion for summary judgment. TSF filed a timely appeal. [5]

7. *TSF's Appeal of the Judgment in favor of the Homeowners*

On September 23, 2011, the Homeowners filed a motion to dismiss TSF's appeal of the September 14, 2010, judgment as moot. The motion was supported by declarations indicating that TSF and Trimark had entered into a settlement agreement, whereby TSF released all of its claims against Trimark, including its claims based on the Note.

On February 15, 2012, we issued an unpublished opinion granting the Homeowners' motion to dismiss. In that opinion, we determined that because the Deed of Trust was merely incident to the Note, it was no longer enforceable under the settlement agreement. We thus concluded that the appeal was moot because regardless of whether the trial court should have granted the Homeowners' motion for summary judgment, TSF could no longer maintain a judicial foreclosure action against them.

---

[5] There are numerous technical problems with TSF's appeal. TSF filed a notice of appeal on November 23, 2010, before the trial court adjudicated Fidelity's motion for summary judgment. The appeal thus was premature. Further, the notice of appeal stated that TSF was appealing the September 14, 2010, judgment. Fidelity, however, was not a party to that judgment or any judgment entered by the trial court. The notice of appeal also stated: "The Notice of Appeal filed with this Court on November 17, 2010 [of the September 14, 2010 judgment] shall also apply to issues raised by Fidelity National Title Insurance Company in its Motion for Summary Judgment filed but not heard by this court . . . ." TSF cannot appeal "issues"; it can only appeal an appealable order or judgment. The February 11, 2011, order granting Fidelity summary judgment was not appealable. (*Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1407, fn. 2.) Nonetheless, in the interests of justice and to avoid delay, we treat the order as a judgment. (*Ibid.*) Further, construing the November 23, 2010, notice of appeal liberally (Cal. Rules of Court, rule 8.100(a)(2)), and in light of the superior court's announcement that it was ruling against TSF on the Homeowners' motion for summary judgment, which raised similar issues to Fidelity's motion for summary judgment, we shall treat TSF's notice of appeal as filed immediately after the entry of the February 11, 2011, "judgment." (Cal. Rules of Court, rule 8.104(d)(2).)

8.      *Motion to Dismiss in This Case*

On July 27, 2012, Fidelity filed a motion to dismiss this appeal on, among other grounds, that the appeal was moot in light of the settlement agreement between TSF and Trimark. We denied the motion on September 10, 2012. We concluded that this appeal was not moot because the settlement agreement had no impact on the essential issue here, namely whether TSF can recover damages against Fidelity for its alleged negligence in 2008.

## CONTENTIONS

TSF contends that contrary to the trial court's conclusion, it did have encumbrances on the Homeowners' condominium units. According to TSF, at least part of the common area of the units is on the TSF Parcel. TSF argues that because the Deed of Trust is an encumbrance on the TSF Parcel, it is also an encumbrance on the Homeowners' condominium units even though the units are located on the VDO Parcel. It also argues that it has a "blanket encumbrance" on Tract No. 53419, which includes the VDO Parcel. Fidelity contends that the trial court correctly determined that the Deed of Trust did not encumber any of the Homeowners' condominium units.

TSF further argues that as an escrow holder and title insurer, Fidelity owed TSF a duty of care. Fidelity contends it owed no duty of care to TSF, even assuming the Deed of Trust encumbered the condominium units.[6]

---

[6]     After the parties filed their respective briefs, Fidelity filed a request for judicial notice of a document entitled "Certificate of Status" issued by the California Secretary of State. This document indicates that TSF filed a Certificate of Cancellation on July 30, 2012, and that TSF "is no longer authorized to transact intrastate business in California." At oral argument, Fidelity argued that TSF did not have standing to maintain this appeal. Because we affirm the February 18, 2011, order for the reasons stated *post*, we do not reach Fidelity's standing argument.

## DISCUSSION

A motion for summary judgment is properly granted when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review an order granting a motion for summary judgment de novo. (*Gutierrez v. Girardi* (2011) 194 Cal.App.4th 925, 931.) The first step in our analysis is to identify the issues raised by the pleadings " 'since it is these allegations to which the motion must respond.' " (*Ibid.*)

The FAC sets forth one cause of action for negligence against Fidelity. The first element of negligence is duty (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 500), the existence of which is a purely legal question. (*Id.* at p. 501.) Thus the "threshold question in an action for negligence is whether the defendant owed the plaintiff a duty to use care." (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 715 (*Summit*).)

In the trial court, Fidelity argued that it owed no duty of care to TSF on two main grounds. First, it contended that it owed no duty to TSF because TSF did not have encumbrances on the nine condominium units sold to the Homeowners. Second, it argued that Fidelity did not owe a duty as an escrow holder to TSF because TSF was not a party to the escrows.

TSF contends that we cannot consider Fidelity's second argument because the trial court did not consider it. We review, however, whether the judgment was correct on any ground, not the trial court's reasoning. (*Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 64.) Further, the issue of duty is an issue of law that has been fully briefed in this court. We thus can and do consider Fidelity's second argument.

9

TSF also argues that it did not have the "ability to present evidence" to the trial court on the issue of Fidelity's duty.[7] We reject this argument. Fidelity raised the issue of duty in its motion for summary judgment. TSF could have opposed the motion and presented any evidence it wished. Merely because TSF voluntarily stipulated to the trial court granting Fidelity summary judgment does not mean it was unfairly denied an opportunity to present evidence.

1.      *Fidelity Did Not Owe a Duty of Care to TSF as an Escrow Holder*

"An escrow may be defined as any transaction in which one person, for the purpose of effecting a sale, transfer or encumbrance of real or personal property to another person, delivers any written instrument, money, evidence of title or other thing of value to a third party, the escrow holder or depository, to be held by him for ultimate transmittal to the other person upon the happening of an event or the performance of certain specified conditions." (*Markowitz v. Fidelity Nat. Title Co.* (2006) 142 Cal.App.4th 508, 526 (*Markowitz*).)

An escrow holder is an agent and fiduciary of the parties who are exchanging instruments and payments through an escrow. (*Summit*, *supra*, 27 Cal.4th at p. 711; *Claussen v. First American Title Guaranty Co.* (1986) 186 Cal.App.3d 429, 435.) It is obligated to strictly comply with the instructions of the parties. (*Amen v. Merced County Title Co.* (1962) 58 Cal.2d 528, 531.) If an escrow holder fails to do so, the injured party has a cause of action for breach of contract. (*Id.* at p. 532.)

---

[7]      TSF contends that it could have presented the 2010 settlement agreement between TSF and Trimark in opposition to Fidelity's motion for summary judgment. According to TSF, the agreement retroactively made TSF a "party" to the 2008 escrow agreements with Fidelity. This is simply not true. Under the agreement, Trimark assigned its claims, if any, against Fidelity to TSF. Any claim *Trimark* may have against Fidelity is not an issue in this case because TSF did not assert such a claim, as an assignee, in its FAC.

An escrow holder, however, " 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citations.] Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions." (*Summit, supra*, 27 Cal.4th at p. 711.)

In *Summit*, Dr. John Furnish was the maker of a promissory note to Talbert. (*Summit, supra*, 27 Cal.4th at p. 708.) The note was secured by a deed of trust on Furnish's real property. (*Ibid.*) At the same time the deed of trust was recorded, another document was recorded which assigned the beneficial interest in the note and deed of trust from Talbert to plaintiff Summit. (*Id.* at p. 709.)

Subsequently, Furnish obtained a new loan from Dundrel that was used in part to pay the Talbert note. (*Summit, supra*, 27 Cal.4th at p. 709.) Furnish and Dundrel employed BHE to handle the refinancing transaction, and defendant CLTC "acted as an escrow holder in connection with issuing the title insurance for the new deed of trust securing the new note payable to Dundrel." (*Ibid.*) Although CLTC prepared a preliminary title report noting that the Talbert note and deed of trust had been assigned to Summit, CLTC nonetheless paid Talbert from funds deposited by Dundrel in accordance with the payoff demand and BHE's instructions. Summit did not receive these funds from Talbert. (*Ibid.*)

Summit sued CLTC for negligence, contending that CLTC breached its duty of care to Summit by making the payment due under the Talbert note to Talbert rather than to Summit. (*Summit, supra*, 27 Cal.4th at p. 710.) The California Supreme Court held, however, that CLTC owed no duty of care to Summit. The court determined that even though CLTC "was aware of the assignment from Talbert to Summit, there is no evidence CLTC was aware of any collusion or fraud in the fund disbursement that would have adversely affected any party to the escrow." (*Id.* at p. 711.)

11

The Supreme Court also approved the Court of Appeal's application of the six-factor *Biakanja* test to the facts and circumstances of the case.[8] (*Summit*, *supra*, 27 Cal.4th at pp. 715-716.) Under that test, CLTC did not owe a duty of care to Summit. (*Id.* at p. 716.) The Supreme Court concluded: "We decline to adopt a rule that would, by subjecting an escrow holder to conflicting obligations, undermine a valuable business procedure, and we therefore affirm the judgment of the Court of Appeal [in favor of CLTC]." (*Ibid.*)

The holding of *Summit* is on point here. TSF was not a party to the escrows opened in connection with the nine transactions involved in this case.[9] Further, there is no evidence that Fidelity was aware of any collusion or fraud in the disbursement of funds. Under *Summit*, Fidelity had no duty of care to TSF.

TSF argues that Fidelity owed a duty of care because Fidelity had knowledge of TSF's express objection to Fidelity's disbursement of escrow funds in connection with the sale of the ninth condominium unit. A similar argument was rejected in *Summit*. There, the escrow holder knew that the plaintiff, a third party, was assigned the beneficial interest in a note and deed of trust. The court nonetheless held that the escrow holder did not owe a duty of care to the plaintiff.

---

[8] In *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*), the court stated: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm."

[9] TSF argues that it "was a party to the escrow." It contends that "Steve Kessler of Trimark testified in deposition that TSF was a party to the escrow." TSF, however, did not include Kessler's deposition transcript in the record. We thus must reject TSF's factual assertion based on Kessler's alleged deposition testimony. (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.) Moreover, the escrow instructions, which are in the record, do not indicate TSF was a party to any of the escrows.

In all material respects, Fidelity was in the same position as the escrow holder in *Summit*. Like the escrow holder in *Summit*, Fidelity was faced with an ostensible conflict between the escrow instructions of the parties to the escrow on the one hand, and a claim by a third party, on the other. By faithfully following the instructions of the parties to the escrow, Fidelity satisfied its obligations as an escrow holder and cannot be liable to third parties, such as TSF, for doing so.

TSF argues that under the six factors set forth in *Biakanja*, Fidelity owed a duty of care to TSF. The *Summit* court, however, analyzed these same six factors in circumstances very similar to this case, and concluded that the escrow holder did not owe a duty of care to a third party. (*Summit*, *supra*, 27 Cal.4th at pp. 715-716.) The same analysis applies here. As an escrow holder, Fidelity did not owe a duty of care to TSF.

2.     *Fidelity Did Not Owe a Duty of Care to TSF as a Title Insurer*

TSF argues that Fidelity owed it a duty of care as a title insurer. "Title insurance is a contract by which the title insurer agrees to indemnity its insured against losses caused by defects in or encumbrances on the title not excepted from coverage. [Citation.] An insured's claim against his title insurer is under the policy, and an insured has no separate claim against a title insurer based on negligence or negligent misrepresentation." (*Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 675-676.) "A party who does not purchase title insurance may not rely on the title insurer to protect his or her interests or to disclose all detrimental information contained in the recorded files." (*Siegel v. Fidelity Nat. Tit. Ins. Co.* (1996) 46 Cal.App.4th 1181, 1193.)

In the present case, TSF cited no evidence that it was Fidelity's insured. The relevant title insurance policies are not in the record. We thus assume that TSF was a third party to the policies. TSF has not cited any case law supporting its argument that a title insurer may be liable to a third party under a negligence theory. We hold that under the circumstances of this case, Fidelity did not owe TSF a duty of care as a title insurer.

13

TSF argues that Fidelity owed it a duty of care under Civil Code section 2941, subdivision (b)(6).  Civil Code section 2941 governs the duties of various parties, such as trustees of deeds of trust and mortgagees, upon the satisfaction of an obligation (e.g., promissory note) secured by a deed of trust or mortgage.  (See *Pintor v. Ong.* (1989) 211 Cal.App.3d 837, 843.)  Subdivision (b)(6) of the statute provides:  "In addition to any other remedy provided by law, a title insurance company preparing or recording *the release of the obligation* shall be liable to any party for damages, including attorney's fees, which any person may sustain *by reason of the issuance and recording of the release*, pursuant to paragraphs (3) and (4)."  (Civ. Code, § 2941, subd. (b)(6), italics added.)  In this case, there is no evidence that Fidelity prepared or recorded a release of the Note or any other secured obligation.  Accordingly, Fidelity did not have a duty under Civil Code section 2941 to TSF.[10]

We conclude that the trial court correctly granted Fidelity summary judgment on TSF's sole cause of action for negligence because Fidelity did not owe TSF a duty of care as either an escrow holder or title insurer.

3.      *We Do Not Reach the Issue of Whether TSF Had Encumbrances on the Condominium Units Sold to Homeowners*

Because we conclude that the trial court correctly granted Fidelity's motion for summary judgment for the reasons stated *ante*, we do not reach the issue of whether the trial court correctly determined that TSF did not have encumbrances on the nine condominium units sold to Homeowners.

---

[10]    To the extent TSF argues that Fidelity had a duty of care as an escrow holder under Civil Code section 2941, we reject that argument.  "The plain language of the statute imposes no obligations on an escrow holder whose role it is to facilitate the exchange of documents between the beneficiary and the trustee, or to record the reconveyance on behalf of the trustee."  (*Markowitz*, *supra*, 142 Cal.App.4th at p. 523.)

14

## DISPOSITION

Treating the superior court's February 18, 2011, order granting Fidelity's motion for summary judgment as a judgment in favor of Fidelity and against TSF, we affirm. Fidelity is awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KITCHING, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

15