Filed 4/29/15  Armenta v. First American Fund Control CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LUIS ARMENTA et al., | D065160 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. Nos. 37-2011-00091186-CU-FR-CTL, 37-2011-00102311-CU-FR-CTL.) |
| FIRST AMERICAN FUND CONTROL, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Gilliland & Burgess, Douglas S. Gilliland, Leonard H. Burgess and Nicholas J. Lewis, for Plaintiffs and Appellants.

Jones Day, Edward Patrick Swan, Jr., Nathaniel P. Garrett and Katie Keitges, for Defendant and Respondent.

INTRODUCTION

Luis and Laurentia Armenta, Diana and Talal Rada, Camille Bizot, Carlos Alvarez, Aaron Salinas, Keith and Patricia Dauschmidt, Rosina Orozco, Theresa and

Gerassimos Messoloras and Berneta Nelson (collectively plaintiffs) agreed to purchase units in a condominium development in the Tijuana-Ensenada area of Baja, Mexico. The project owner and contractor failed to complete and deliver the units as promised. Plaintiffs sued not only the owner, contractor and the escrow holder with which plaintiffs made their deposits, but also First American Fund Control, Inc. (First American), which acted as the fund control or joint control agent for the project. Pursuant to an agreement with only the project owner and the contractor, First American established a separate escrow account for the project, accepted deposits and issued disbursements for construction of the project based on certified requests for payment. The trial court granted First American summary judgment finding it owed no duty to plaintiffs, who were not parties to the fund control escrow and finding the negligence action was barred by the statute of limitations.

On appeal, plaintiffs contend the general rule precluding an escrow holder's liability to third parties should not apply because First American was not a traditional escrow holder and, even if the general rule applies, we should impose a duty on First American after balancing the factors set forth in *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 (*Biakanja*). We disagree with these contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A

First American's predecessor entered into a fund control agreement and addendum (agreement) in July 2005, with the Residences (owner) and Coastal Design &

2

Development (contractor) for construction of a condominium project in Mexico.[1] Jack Crosky signed the agreement on behalf of both the owner and the contractor acting as the manager of each entity. First American's obligation under the agreement consisted of receiving deposits "all or a portion of which will be provided by the [owner[2]]," placing them into an escrow account and making disbursements from the project escrow account for construction of the condominium project. First American earned a total fee of $30,000 for performing the basic services required by the agreement.

The agreement contained instructions for First American to make disbursements. Not more than once per week, the contractor was authorized to request an advance of funds by identifying the amount of funds requested, allocating the requested funds to identified project cost categories, naming each payee, and identifying the amount to be disbursed to each payee. The contractor certified the information in the request for advance was true, accurate and not subject to qualification. According to the agreement, First American was "authorized to fully rely upon the foregoing certification and [First American] shall not incur any liability resulting from such reliance."

---

[1] First American is an escrow company licensed in California. It was formerly known as California Fund Control, Inc. and First American is the successor-in-interest to California Fund Control, Inc. For ease of reference, we use First American to refer to both companies.

[2] The fund control agreement required the report be made to the lender, which was identified as "The Residences LLC." The addendum, however, stated all references to "[l]ender" in the agreement are deemed to mean owner, identified as "The Residences." For ease of reference, we refer to both entities as "owner."

First American was to provide the owner a report summarizing the request for advance and any prior disbursements by cost category. Once the owner approved the request for funds, the requested funds were transferred to First American.

Thereafter, the contractor submitted a voucher, signed by an authorized individual, to request disbursement of funds. The contractor authorized three individuals to sign and deliver vouchers, each of whom represented and warranted they would "sign [v]ouchers only for labor, materials, services, and expenses actually and properly incurred in the construction of the Project." First American was then authorized to disburse the amount identified in the voucher. First American had no obligation or liability to any person or entity if it complied with the disbursement instructions.

The agreement provided the contractor could, from time to time, request First American to conduct an inspection of the project for a fee of $600 for each inspection. In such inspections, First American would briefly visit and take photographs of the project and then prepare a report to the owner and the contractor with an estimate of the approximate completion of certain construction phases. However, the purpose of such inspections was solely for the use of the contractor and the owner to compare completion estimates. According to the agreement, the inspection reports could not be used or relied upon by any other person or entity and the owner and the contractor were not to disclose the contents of the inspection report without First American's consent. Although First American conducted some inspections initially, they were not intended for quality assurance and First American stopped performing them because they were no longer being paid to perform inspections.

4

The agreement provided it was intended for the benefit of the owner, the contractor and First American only. It was not intended for the benefit of anyone else. The agreement also limited First American's obligations solely to making disbursements as provided by the agreement. It disclaimed (1) any responsibility for construction of the project in accordance with any plans, specifications or contracts to which First American was not a party, (2) any duty to inspect the project or to verify the information it received, and (3) any responsibility for determining the funds disbursed were actually used as described in the requests for advance or the vouchers.

B

Between August 2005 and August 2007, plaintiffs agreed to purchase condominium units in the project. The purchase agreements executed by the plaintiffs stated an escrow account was established with Stewart Title Company of California, Inc. (Stewart Title) to hold and disburse buyers' deposits. The purchase agreements also disclosed the seller had contracted with First American's predecessor, "a third party control voucher company" that would "be in charge of . . . disbursement of funds from [Stewart Title] to pay for materials, labor and other expenses for the construction of the condominium development." The anticipated delivery date for most of the units was September 2007. One unit was estimated to be completed and delivered by April 2008.

According to plaintiffs, the owner represented in marketing materials and in the purchase agreements First American would provide independent construction control inspections. However, none of the plaintiffs spoke to anyone at First American and they received no documents, advertising material or correspondence from First American.

5

Between July 2005 and November 2008, First American received deposits totaling $31,405,567.40 from a number of sources including Stewart Title, "owner" and "The Residences."  First American disbursed all but $636.25 of those funds from the account in accordance with the agreement.

The units were not delivered by the anticipated dates.  Construction ceased in the fall of 2008 while the owner attempted to negotiate additional construction loan funds from another lender.

C

Plaintiffs sued First American along with the owner, contractor and Stewart Title in December 2011.  Plaintiffs alleged First American was negligent (third cause of action) for releasing plaintiffs' deposit funds without obtaining authorizations from the plaintiffs, resulting in a loss of their deposit funds.  They also alleged First American was negligent in failing to ensure the quality of the construction.  Plaintiffs alleged First American violated Business and Professions Code section 17200, otherwise known as the Unfair Competition Law (UCL) (seventh cause of action), and made negligent or intentional misrepresentations (ninth and tenth causes of action) by purportedly assenting to representations made to the plaintiffs by the developers regarding the role of First American.

The trial court granted summary judgment for First American after summarily adjudicating each of the causes of action alleged against First American.  With respect to negligence, the court ruled First American owed no duty to plaintiffs because they were third parties to the escrow services First American provided pursuant to the agreement

6

and an analysis of the factors outlined in *Biakanja*, *supra*, 49 Cal.2d at page 650, does not support imposing a duty to parties not in privity to the fund control escrow. Additionally, the court determined the negligence cause of action was barred by the statute of limitations. With respect to the misrepresentation/concealment causes of action, the court granted summary adjudication because First American made no representations to the plaintiffs and it owed them no fiduciary duty. Finally, the court granted summary adjudication of the UCL cause of action concluding plaintiffs had not established First American's conduct was unfair, fraudulent or unlawful. Plaintiffs appeal contending the court erred in its duty analysis and in its statute of limitations analysis.[3]

## DISCUSSION

### I

### *Standard of Review*

A defendant is entitled to summary judgment if it shows one or more elements of the cause of action cannot be established or there is a complete defense to the plaintiff's cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 (*Aguilar*).) If the defendant meets this initial burden, the burden of production shifts to the plaintiff to show a triable, material controversy as to whatever defense or element of the cause of action defendant claims is not established. (*Ibid.*)

---

[3]    The opening brief raises no issues relating to the court's summary adjudication of the UCL cause of action. Therefore, any such issues are waived. (*Roberts v. Assurance Co. of America* (2008) 163 Cal.App.4th 1398, 1410.)

7

"[W]e review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We liberally construe the evidence in support of the party opposing summary judgment. (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, at p. 850.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

II

*First American Owed No Duty to Plaintiffs*

Plaintiffs contend on appeal the trial court erroneously concluded First American did not owe them a duty as a matter of law for two reasons. First, plaintiffs contend the general rule limiting an escrow holder's obligations to compliance with escrow instructions does not apply because First American was not performing traditional escrow services. Second, plaintiffs contend a duty should be found based on an analysis of the factors enunciated in *Biakanja*, *supra*, 49 Cal.2d 647. We disagree with both contentions.

A

An "agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow." (*Summit*

8

*Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 (*Summit*).) "[N]o liability attaches to the escrow holder for [its] failure to do something not required by the terms of the escrow or for a loss incurred while obediently following [the] escrow instructions." (*Lee v. Title Ins. & Trust Co.* (1968) 264 Cal.App.2d 160, 163.) "[A]n escrow holder 'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.' [Citations.] Absent clear evidence of fraud, an escrow holder's obligations are limited to compliance with the parties' instructions." (*Summit*, *supra*, at p. 711.)

Plaintiffs contend this general rule does not apply because First American was not acting as an escrow agent. " 'Escrow' means any transaction in which one person, for the purpose of effecting the sale, transfer, encumbering, or leasing of real or personal property to another person, delivers any written instrument, money, evidence of title to real or personal property, or other thing of value to a third person to be held by that third person until the happening of a specified event or the performance of a prescribed condition, when it is then to be delivered by that third person to a grantee, grantor, promisee, promisor, obligee, obligor, bailee, bailor, or any agent or employee of any of the latter." (Fin. Code, § 17003.)

A fund control, also known as a joint control agent, is defined as "a person engaging in the business of receiving money or other property for disbursal or use in payment of the cost of labor, materials, services, permits, fees, or other items of expense incurred in the construction of improvements upon real property." (Fin. Code,

9

§ 17005.1.)  The Legislature has declared, " 'escrow agent' as used in this division includes joint control agents."  (Fin. Code, § 17005.6.)

First American acted as a fund control or joint control agent for the purpose of receiving money from the owner, which it then disbursed according to the terms of the agreement for "payment of the cost of labor, materials, services, permits, fees, or other items of expense incurred in the construction of improvements upon real property."  (Fin. Code, § 17005.1.)  Plaintiffs do not dispute funds were disbursed in accordance with the agreement.   Therefore, we conclude First American was acting as an escrow agent.

Plaintiffs established no evidence of fraud on the part of First American to require an exception to the general rule that an escrow holder does not owe a duty to third parties to the escrow.  Plaintiffs contend First American knew it was handling their funds because some of the funds it received were from Stewart Title.   However, plaintiffs presented no evidence First American made fraudulent misrepresentations to the plaintiffs or participated in any fraudulent conduct.  There is no evidence knowledge of these deposits from Stewart Title rendered the agreement false.  The agreement stated deposits would be made to First American's project escrow account "all or a portion of which shall be provided by [the owner]."  The record shows First American received deposits not only from Stewart Title, but also from the owner and other entities. Therefore, under the general rule limiting First American's obligations to compliance with the escrow instructions, First American owed no fiduciary duty to the plaintiffs, who were not parties to the agreement.

B

Nonetheless, plaintiffs argue we should impose a tort duty on First American after balancing the *Biakanja*, *supra*, 49 Cal.2d 647 factors in this case. We are not persuaded.

" '[A] duty to manage business affairs so as to prevent purely economic loss to third parties in their financial transactions is the exception not the rule, in negligence law.' " (*Summit*, *supra*, 27 Cal.4th at p. 715.) " 'The determination whether in a specific case the defendant will be held liable to a third person not in privity [of contract] is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm." (*Ibid.,* quoting *Biakanja*, *supra*, 49 Cal.2d at p. 650.)

In *Summit*, the Supreme Court determined application of the *Biakanja*, *supra*, 49 Cal.2d 647 factors to an escrow holder provided "no reason to depart from 'the general rule that an escrow holder incurs no liability for failing to do something not required by the terms of the escrow or for a loss caused by following the escrow instructions.' " (*Summit*, *supra*, 27 Cal.4th at pp. 715-716.) We similarly conclude application of the *Biakanja* factors to the facts of this case does not compel departure from the general rule.

First, the agreement was not intended to affect the plaintiffs. Plaintiffs were not parties to the agreement. The agreement specified it was "made and intended to be for the benefit of Owner, Contractor and [First American] only and *is not intended to be for*

11

*the benefit of anyone else . . . ."* (Italics added.) Plaintiffs contend we should look beyond this express term of the agreement to conclude the overall transaction was intended to affect the plaintiffs. However, any impact to plaintiffs from First American's receipt and disbursement of funds based on the agreement "was collateral to the primary purpose of the escrow." (*Summit, supra,* 27 Cal.4th at p. 715.) Additionally, the "conduct alleged to have been negligent must have been intended to affect [the] particular plaintiff, rather than just a class of persons to whom the plaintiff happens to belong." (*Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781, 792.) First American presented evidence the funds it received from Stewart Title were not marked or identified as to any plaintiff. The fact First American may have been generally aware some investor funds were deposited is not sufficient to give rise to a special duty of care to any particular plaintiff.

Second, the injuries plaintiffs allege—delays in the delivery of their units or misuse of funds by the owner—were not foreseeable from First American's conduct, which was limited to receiving funds and disbursing them pursuant to the agreement based on certified requests and vouchers indicating the funds were necessary for project construction. Any remedy plaintiffs may have for delays or misuse of funds would be with the owner or the contractor.

Third, although the plaintiffs did not timely receive delivery of their units, there is no close connection between any conduct by First American in distributing funds pursuant to the terms of the fund agreement and the delay in construction or any alleged misuse of funds by the owner. Plaintiffs' contract informed them their funds would be

12

deposited with Stewart Title and First American would disburse funds from Stewart Title to pay for construction. This was consistent with what Crosky told the representative from First American when they were asked to act as a fund control agent. He informed First American a lender would be involved, but they would also have a source of funds from the buyers for construction disbursement. There is no evidence First American participated in any misuse of funds or did anything to delay distributions of funds resulting in delay of construction. Plaintiffs contend in reply the $10,000,000 used to construct the hotel portion of the development was not "authorized by the condominium buyers." However, the purchase agreement executed by the plaintiffs described the development as including "vertical condominium apartments, and villas, named '*The Residences*' and a 'boutique hotel and spa' named '*The Hotel.*' " Nothing in the agreement required First American to seek authorization from individual investors before making construction distributions.

Finally, First American's alleged conduct is not morally blameworthy and we are not persuaded a policy of imposing liability on an escrow agent to act beyond the escrow instructions is necessary to prevent future harm. Requiring fund control agents to act as an insurer of the quality of construction or to make disclosures to individual investors of suspected misuse of funds would undermine the purpose of fund control escrows. It would subject the fund control to litigation from third parties for failure to disclose, but if it disclosed inaccurate information, it could subject itself to litigation from the parties to the agreement for violating the duty to comply with the escrow instructions or interfering with contract. It "would effectively discourage a reasonable and prudent man or

13

company from acting as an escrow holder and would ultimately defeat the very purpose for which escrows originated." (*Lee v. Title Ins. Co.*, *supra*, 264 Cal.App.2d at p. 163.) We, therefore, conclude "[c]ompliance by [First American] with its fiduciary duty to follow the instructions of the parties to the escrow was not blameworthy and is, instead, a policy consideration that militates against concluding [First American] had a tort duty in this case." (*Summit*, *supra*, 27 Cal.4th at p. 716.)

Given our conclusion, we need not address the statute of limitations issue.

III

*Concealment*

Plaintiffs contend if First American is viewed as an escrow agent, it owed them a fiduciary duty, as beneficiaries of the escrow, to disclose what they were doing with plaintiffs' funds. We do not agree. As discussed above, First American made no representations to plaintiffs, plaintiffs were not parties to the joint fund control escrow, the agreement was not made for plaintiffs' benefit and First American owes them no fiduciary duty. "Absent a fiduciary relationship, nondisclosure is not fraudulent concealment—affirmative deceptive conduct is required." (*Long v. Walt Disney Co.* (2004) 116 Cal.App.4th 868, 874.)

14

DISPOSITION

Judgment is affirmed.  Respondent is entitled to costs on appeal.


McCONNELL, P. J.

WE CONCUR:


McINTYRE, J.


AARON, J.