Filed 11/9/23  Cadu Medical v. James Worldwide CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| CADU MEDICAL, LLC et al., | B321892 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCV21813) |
| v. | |
| JAMES WORLDWIDE, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Reversed with directions.

Ervin Cohen & Jessup, Michael D. Murphy and Catherine A. Veeneman for Plaintiffs and Appellants.

Squire Patton Boggs, Helen H. Yang and Shaun Kim for Defendants and Respondents.

# INTRODUCTION

Peter Groverman formed Cadu Medical, LLC in 2020 to broker transactions between manufacturers and retailers of personal protective equipment (PPE), which was in great demand during the COVID-19 pandemic. Groverman introduced FCO Genesis I, Inc., a supplier of medical gloves, and Mohawk Group, Inc., an e-commerce consumer products company. FCO Genesis agreed to sell Mohawk more than 300,000 boxes of gloves for $4.4 million. The parties agreed to use James Worldwide, Inc. and James Lee as the escrow agents. When FCO Genesis failed to deliver the gloves, Mohawk demanded that James Worldwide and Lee return Mohawk's payment. They did not. Groverman later learned a third party, M&W Suppliers, had withdrawn the money from the escrow account.

Cadu and Groverman filed this action against FCO Genesis, James Worldwide, Lee, M&W, and others. Cadu and Groverman alleged causes of action against James Worldwide and Lee for intentional and negligent interference with prospective economic advantage, fraud, fraudulent concealment, negligent misrepresentation, aiding and abetting fraud, and negligence. The trial court sustained a demurrer by James Worldwide and Lee without leave to amend and entered judgment in their favor. Cadu and Groverman appealed.

We conclude the trial court did not err in sustaining the demurrer to Cadu and Groverman's causes of action for negligence and negligent interference with prospective economic advantage, but erred in sustaining the demurrer to the other causes of action. Therefore, we reverse.

2

## FACTUAL AND PROCEDURAL BACKGROUND

> A.   *Groverman Brokers a Deal for the Purchase and Sale of Medical Gloves*

Groverman was a principal of Grovara, a global exporter of American wellness products.[1]  When the COVID-19 pandemic exposed deficiencies in the supply of PPE, Groverman created Cadu to extend Grovara's business-to-business marketplace platform into the PPE market.  Groverman met Keven Kim, who said his company, FCO Genesis, could import large quantities of medical gloves into the United States.  Groverman introduced Kim to Mohawk, an e-commerce consumer products company interested in purchasing medical gloves.  In February 2021 representatives of Mohawk and FCO Genesis spoke by telephone and negotiated a deal for the purchase and sale of medical gloves.

The parties agreed Mohawk would transfer the purchase price for the medical gloves into an escrow account pending delivery of the gloves.  Kim suggested using James Worldwide and Lee as escrow agents.  Kim, however, did not disclose that FCO Genesis had a dispute with James Worldwide and Lee or that the agreement to resolve their dispute incentivized each party to find a new customer to purchase PPE, with the funds going to pay James Worldwide.  Thus, Kim knew at the time James Worldwide and Lee "were not unbiased."  Groverman,

---

[1]   We recite the facts alleged as in the operative, second amended complaint, which we accept as true for purposes of reviewing the trial court's order sustaining the demurrer by James Worldwide and Lee.  (See *Mathews v. Becerra* (2019) 8 Cal.5th 756, 786.)

Mohawk, and FCO Genesis agreed to designate James Worldwide and Lee as escrow agents.

Mohawk and FCO Genesis entered into a purchase and sale agreement. The agreement provided that Mohawk would pay $4,384,240 for 313,160 boxes of medical gloves. Mohawk, FCO Genesis, and Lee signed an escrow agreement, which provided: (1) Mohawk would wire the payment to an escrow account managed by James Worldwide and Lee; (2) FCO Genesis would deliver the gloves within 10 days; and (3) if FCO Genesis did not deliver the gloves within 10 days, Mohawk could request and receive all of the money it had deposited in the escrow account. While the parties were drafting and executing the two agreements, Cadu and Groverman "acted as a moderator between the parties so as to ensure that the overall deal stayed on track."

On the day Mohawk, FCO Genesis, and Lee signed the agreements, Groverman spoke with Lee. Lee assured Groverman that FCO Genesis and Kim "could be trusted" and "would follow-through on the deal" and that James Worldwide and Lee had "'done over $100 million in business'" with FCO Genesis and Kim. What Lee did not tell Groverman was that he was in a dispute with FCO Genesis, that James Worldwide claimed FCO Genesis owed it more than $5 million, or that FCO Genesis claimed James Worldwide owed it almost $10 million.

B.    *Mohawk Pays the Money, but Doesn't Get the Gloves*

Mohawk deposited the purchase price into the escrow account. When FCO Genesis did not deliver the gloves within 10 days, Mohawk demanded its money back. Lee, however, did not return Mohawk's money. Groverman contacted Kim, who told Groverman the escrow account was not managed by

James Worldwide and Lee, but instead was a bank account accessible by a company called M&W Suppliers. Kim admitted M&W, not FCO Genesis, was the importer of the gloves. Kim put Groverman in touch with a representative of M&W, who told Groverman that M&W had withdrawn Mohawk's money from the account because FCO Genesis owed M&W money for medical supplies FCO Genesis had purchased from M&W.

Mohawk never received the gloves. As a result, Cadu and Groverman lost a percentage of sales they anticipated earning from the transaction. Cadu and Groverman also lost Mohawk as a client: Mohawk said that, because of the FCO Genesis debacle, it would never again do business with Cadu or Groverman. And losing Mohawk as a client caused additional financial repercussions for Cadu and Groverman: Before the FCO Genesis deal, Mohawk told Groverman that it planned to order one million boxes of gloves every week for the next 12 months, which led Cadu and Groverman to start lining up suppliers of PPE (other than FCO Genesis) to fulfill Mohawk's anticipated future orders. When the FCO Genesis deal failed and Cadu lost Mohawk's business, however, Cadu had to cancel its agreements with the other suppliers, who also said they would never work with Cadu again. Other buyers Cadu worked with also cut ties with Cadu when they heard about the failed FCO Genesis transaction. Cadu and Groverman's reputations were so badly damaged by the failure of the FCO Genesis transaction that Groverman shut down Cadu.

C.     *Cadu and Groverman File This Action, and the Trial Court Sustains James Worldwide and Lee's Demurrer*

Cadu and Groverman filed this action in June 2021.  They alleged causes of action against James Worldwide and Lee for intentional and negligent interference with prospective economic advantage, fraud, fraudulent concealment, negligent misrepresentation, aiding and abetting fraud, and negligence.  The trial court sustained the demurrer to the first amended complaint with leave to amend.

Cadu and Groverman filed a second amended complaint, and James Worldwide and Lee demurred again.  This time the trial court sustained the demurrer to all causes of action without leave to amend.  The court ruled Cadu and Groverman did not sufficiently allege a special relationship such that James Worldwide and Lee owed Cadu and Groverman a duty of care.  The court also ruled Cadu and Groverman did not allege James Worldwide and Lee caused Cadu and Groverman's damages.  The court stated that, "in terms of the causation of the damages, you can't connect them to these moving defendants" and that Cadu and Groverman pleaded "no facts establishing the nexus for why liability should attach."  The court also ruled Cadu and Groverman did not allege fraud with sufficient particularity.  Cadu and Groverman timely appealed from the ensuing judgment.

## DISCUSSION

A.     *Applicable Law and Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'"

(*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; see *Downey v. City of Riverside* (2023) 90 Cal.App.5th 1033, 1043-1044, review granted July 19, 2023, S280322.)  "We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken."  (*Regina v. State of California* (2023) 89 Cal.App.5th 386, 396-397; see *Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.)  We "'accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations.'"  (*Marina Pacific Hotel & Suites, LLC v. Fireman's Fund Ins. Co.* (2022) 81 Cal.App.5th 96, 104-105; see *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406.)  Where, as here, "the demurrer was sustained without leave to amend, we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment."  (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.)  "The burden is on plaintiffs to prove that amendment could cure the defect."  (*Ibid.*)

B.   *The Trial Court Erred in Sustaining the Demurrer to the Causes of Action for Fraud and Negligent Misrepresentation*

The elements of fraud are (1) a misrepresentation, (2) knowledge of its falsity; (3) intent to induce another's reliance on the misrepresentation; (4) justifiable reliance, and (5) resulting damage.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255; *Cohen v. Kabbalah Centre Internat., Inc.* (2019) 35 Cal.App.5th 13, 20.)  "The elements of negligent misrepresentation are similar to intentional fraud except for the requirement of scienter; in a

7

claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true." (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 184.) To survive demurrer, the plaintiff must allege facts constituting each element of fraud and negligent misrepresentation with particularity. (*Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 35; *Charnay*, at p. 185, fn. 14.) """This particularity requirement necessitates pleading *facts* which 'show how, when, where, to whom, and by what means the representations were tendered.""" (*People ex rel. Allstate Insurance Company v. Discovery Radiology Physicians, P.C.* (2023) 94 Cal.App.5th 521, 548.)

Cadu and Groverman alleged Lee made the following misrepresentations to Groverman on February 10, 2021: (1) FCO Genesis "could be trusted"; (2) FCO Genesis "would follow-through on the deal"; (3) James Worldwide and Lee had "'done over $100 million in business'" with FCO Genesis; and (4) James Worldwide and Lee "could serve as neutral and reputable escrow agents." Cadu and Groverman alleged Lee knew these statements were false because James Worldwide was involved in an "active dispute" with FCO Genesis. Cadu and Groverman alleged that Lee should have known they would rely on his misrepresentations and that Cadu and Groverman reasonably relied on the misrepresentations by "supporting and advocating for this deal to Mohawk." Cadu and Groverman alleged the fraudulent misrepresentations by James Worldwide and Lee caused Mohawk and other prospective buyers to end their relationships with Cadu and Groverman, which cost them

millions of dollars in lost future earnings. These allegations were sufficient to constitute causes of action for fraud and negligent misrepresentation.

The trial court ruled Cadu and Groverman did not plead fraud or negligent misrepresentation with the required particularity because, regarding "the who, what, when, where, in terms of activities that the defendants did to induce Mohawk to renege, there aren't any facts supporting that." But Cadu and Groverman alleged those very facts. They alleged what Lee said, when he said it, that he intended Cadu and Groverman to rely on his misrepresentations, and that Cadu and Groverman relied on those misrepresentations in encouraging Mohawk to move forward with the FCO Genesis deal. And Cadu and Groverman alleged James Worldwide and Lee's misrepresentations caused Mohawk to terminate its relationship with Cadu and Groverman after Mohawk paid for, but did not receive, the gloves. That was plenty of (and sufficient) particularity.

James Worldwide and Lee argue Lee's statements were opinions, not actionable facts. It is true that, with the exception of Lee's statement he had done over $100 million in business with FCO Genesis (which Cadu and Groverman do not claim was false), Lee's statements—that FCO Genesis could be trusted, that FCO Genesis would follow through, and that James Worldwide and Lee could be neutral and reputable escrow agents—were in the nature of opinions. (See *Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 823 ["" [P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud.""]; *Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 835 ["'The law is quite clear that expressions of opinion are not generally treated as

9

representations of fact, and thus are not grounds for a misrepresentation cause of action.'"].)  But here's the thing: An opinion may be actionable "where it is 'expressed in a manner implying a factual basis which does not exist.'"  (*Jolley v. Chase Home Finance, LLC* (2013) 213 Cal.App.4th 872, 893.) "'[P]redictions or representations as to what will happen in the future are normally treated as opinion; but sometimes they may be interpreted as implying knowledge of facts that make the predictions probable.'"  (*Ibid*.; see, e.g., *id*. at p. 892 [bank employee's statements to a borrower that approval of his loan modification application was "'highly probable,' and 'likely,' and 'look[ed] good'" were actionable because they implied facts]; *Apollo Capital Fund LLC v. Roth Capital Partners, LLC* (2007) 158 Cal.App.4th 226, 241 [investment banker's statements that a "preferred stock offering 'was already, in effect, a "done deal"'" and that early prepayment of notes was "'"guaranteed"'" were actionable statements of facts, not opinions or predictions].)  If "a person advances an opinion in which he does not honestly or cannot reasonably believe, then an action for affirmative fraud will lie if the remaining elements of the tort are present." (*Cooper v. Jevne* (1976) 56 Cal.App.3d 860, 866; see *Pacesetter Homes, Inc. v. Brodkin* (1970) 5 Cal.App.3d 206, 211 ["expressions of opinion" can be "treated as misrepresentations . . . where the one expressing the opinion does not in fact entertain it"].)

Lee's statements that FCO Genesis was trustworthy, coupled with his statement he had done extensive business with FCO Genesis, implied a factual basis: that James Worldwide and Lee had not had any problems with FCO Genesis.  Cadu and Groverman alleged that implication was false because

FCO Genesis and James Worldwide were involved in a dispute, with each side "accusing the other of owing many millions of dollars on prior transactions." Similarly, Lee's opinion he and James Worldwide could act as neutral and reputable escrow agents was undermined, if not contradicted, by James Worldwide's dispute with FCO Genesis and those two companies' agreement to resolve the dispute and compensate James Worldwide by finding a new customer to purchase PPE. Lee's assurances to Groverman "directly contradicted Lee's personal experiences" with FCO Genesis.

James Worldwide and Lee also argue Cadu and Groverman did not allege with particularity that James Worldwide and Lee intended to defraud Cadu and Groverman. But Cadu and Groverman needed to allege only that James Worldwide and Lee intended to induce them to rely on the misrepresentations, not that James Worldwide and Lee intended to defraud them. (See *Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173 [elements of fraud include ""'intent to defraud, i.e., to induce reliance'""]; *Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214, 1245 [intent element for fraud is "'intent to induce reliance'"]; *Lovejoy v. AT&T Corp.* (2001) 92 Cal.App.4th 85, 93 ["the only intent by a defendant necessary to prove a case of fraud is the intent to *induce reliance*"].) The plaintiff satisfies the intent element by alleging the defendant "*reasonably expected*" the plaintiff to rely on a representation. (*Lovejoy*, at p. 93.) In their fraud cause of action, Cadu and Groverman alleged James Worldwide and Lee "reasonably should have known" Lee's misrepresentations "would be relied upon" by Cadu, Groverman, and Mohawk. Cadu and Groverman further alleged they relied on Lee's misrepresentations in recommending that

11

Mohawk proceed with the transaction. It is a reasonable inference from these allegations that, when Lee made the misrepresentations, he intended to induce Cadu and Groverman to rely on them. Similarly, in their cause of action for negligent misrepresentation, Cadu and Groverman alleged James Worldwide and Lee "intended to induce [Cadu and Groverman] and Mohawk to rely on these misrepresentations so that Mohawk would agree to and sign the Escrow Agreement and Sales Contract." Those facts adequately alleged intent to induce reliance.

James Worldwide and Lee further argue Cadu and Groverman cannot allege James Worldwide and Lee intended to defraud them because they alleged James Worldwide and Lee intended to induce Mohawk, not Cadu and Groverman, to agree to the transaction. James Worldwide and Lee assert they did not have an incentive to induce Cadu and Groverman to rely on any of the alleged misrepresentations. But the two are not mutually exclusive: Cadu and Groverman alleged James Worldwide and Lee intended to induce both Mohawk and Cadu/Groverman to rely on Lee's statements. As for incentive, Cadu and Groverman alleged that, had James Worldwide and Lee not misrepresented the facts, Cadu and Groverman "would have sought another source of PPE and another escrow agent." At the pleading stage this was sufficient. (See *Beckwith v. Dahl* (2012) 205 Cal.App.4th 1039, 1061 ["'[f]raudulent intent is an issue for the trier of fact to decide'"].)

       C.     *The Trial Court Erred in Sustaining the Demurrer to the Cause of Action for Fraudulent Concealment*

""""The required elements for fraudulent concealment are (1) concealment or suppression of a material fact; (2) by a

defendant with a duty to disclose the fact to the plaintiff; (3) the defendant intended to defraud the plaintiff by intentionally concealing or suppressing the fact; (4) the plaintiff was unaware of the fact and would not have acted as he or she did if he or she had known of the concealed or suppressed fact; and (5) plaintiff sustained damage as a result of the concealment or suppression of the fact."'" (*Daneshmand v. City of San Juan Capistrano* (2021) 60 Cal.App.5th 923, 931-932; see *Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 162.)

Cadu and Groverman alleged James Worldwide and Lee never disclosed that M&W, not FCO Genesis, "was in fact the direct importer of the Gloves" and that the "Escrow Account was in fact a bank account that could be accessed by parties other than Lee." Those were pretty important facts to conceal. As stated, Cadu and Groverman also alleged that James Worldwide and Lee told Groverman they had "'done over $100 million in business'" with FCO Genesis and that FCO Genesis "could be trusted," but they did not tell Groverman about their dispute with FCO Genesis. Cadu and Groverman alleged James Worldwide and Lee "concealed these facts with the intention of inducing [Cadu and Groverman] and Mohawk to act," that Cadu and Groverman relied on the false representations by James Worldwide and Lee in "supporting and advocating for this deal to Mohawk," and that had Cadu and Groverman known the truth "they would have suggested Mohawk buy from a different supplier." Finally, Cadu and Groverman alleged they were damaged by the concealment. Those allegations stated sufficient facts to constitute a cause of action for fraudulent concealment.

James Worldwide and Lee contend Cadu and Groverman's cause of action for fraudulent concealment failed because

13

James Worldwide and Lee did not owe a duty to disclose any of the allegedly concealed facts. Cadu and Groverman, however, alleged a sufficient relationship with James Worldwide and Lee to give rise to a duty to disclose.

"'There are "four circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts."'" (*Bigler-Engler v. Breg, Inc.* (2017) 7 Cal.App.5th 276, 311; see *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336.) Other than the first circumstance (fiduciary relationship), "the other three circumstances in which nondisclosure may be actionable presuppose[ ] the existence of some other relationship between the plaintiff and defendant in which a duty to disclose can arise." (*Id.* at pp. 336-337.) That relationship requires "some sort of *transaction* between the parties." (*Id*. at p. 337.)

For a duty to disclose to arise, the parties must be involved in a transaction, but they need not have a contractual relationship. For example, in *Vega v. Jones, Day, Reavis & Pogue* (2004) 121 Cal.App.4th 282 a shareholder of an acquired company sued the law firm that represented the acquiring company for fraudulent concealment. (*Id*. at p. 287.) The shareholder alleged the law firm concealed the "toxic" stock terms of a third-party financing transaction to induce the shareholder to give up his valuable stock in exchange for worthless stock. (*Id.* at p. 290.) The shareholder alleged the law firm concealed the

14

stock provisions by telling the shareholder's attorneys "the transaction was 'standard' and 'nothing unusual,' by failing to provide the proper written disclosure it prepared, and by instead providing a different, sanitized version of the disclosure." (*Ibid.*) The court held that, by preparing a proper disclosure schedule but giving the shareholder and his attorneys a different version that omitted the unfavorable stock provisions, the law firm "specifically undertook to disclose the transaction and, having done so, is not at liberty to conceal a material term." (*Id.* at p. 292.)

Similarly, in *Pavicich v. Santucci* (2000) 85 Cal.App.4th 382 an investor in a restaurant sued an attorney who represented other parties to the transaction for conspiring with his clients to defraud the investor by concealing threats of litigation by previous investors. (*Id.* at p. 388.) The investor alleged he asked the attorney and his clients "if there was anything he should know about the early days of the joint venture before investing." (*Id.* at p. 386.) The attorney responded that negotiations with two businessmen "had not been fruitful" and that the businessmen "had signed a legally binding release to avoid any future problems or claims." (*Ibid.*) The attorney did not tell the investor the businessmen claimed the release had been procured by fraud and had threatened litigation. (*Ibid.*) The court held the investor stated a cause of action against the attorney for conspiring to defraud the investor because one "'who is asked for or volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.'" (*Id.* at p. 398.)

Cadu and Groverman interacted directly with James Worldwide and Lee. (See *Bigler-Engler v. Breg, Inc.*, *supra*, 7 Cal.App.5th at p. 312 [the transactional relationship

creating a duty to disclose "must necessarily arise from direct dealings between the plaintiff and the defendant; it cannot arise between the defendant and the public at large"].) Even if Lee did not initially have an obligation to disclose information to Groverman, once he chose to speak about his prior dealings with FCO Genesis, he had a duty to disclose all material facts. (See *ibid.* [where there is a sufficient relationship, "'a duty to speak may arise when necessary to clarify misleading "half-truths"'"]; *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1164-1165 ["intentional concealment exists when a party to a transaction, who is under no duty to speak, nevertheless does speak and suppresses facts which materially qualify the facts stated"]; *Pavicich v. Santucci, supra,* 85 Cal.App.4th at p. 398 ["where one does speak he must speak the whole truth to the end that he does not conceal any facts which materially qualify those stated"]; see also Civ. Code, § 1710 [fraud includes the "suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact"].) Cadu and Groverman sufficiently alleged that, once Lee told Groverman that he had worked with FCO Genesis and that FCO Genesis was reputable and trustworthy, Lee had a duty to disclose that he and James Worldwide had a dispute with FCO Genesis over a previous PPE transaction.

James Worldwide and Lee also contend, as they did regarding the causes of action for fraud and negligent misrepresentation, Cadu and Groverman did not and cannot allege James Worldwide and Lee intended to defraud them. Cadu and Groverman alleged similar facts in all three causes of action. In the fraudulent concealment cause of action, Cadu and

Groverman alleged James Worldwide and Lee concealed facts about M&W's role in the transaction, M&W's access to the escrow account, and James Worldwide's dispute with FCO Genesis, all "with the intention of inducing [Cadu and Groverman] and Mohawk to act in reliance" on them.  Cadu and Groverman also alleged that Cadu and Groverman relied on James Worldwide and Lee's false representations in "supporting and advocating for this deal to Mohawk" and that, had Cadu and Groverman known the truth, "they would have suggested Mohawk buy from a different supplier."  True, the allegation regarding false representations appears to have been copied from the fraud cause of action, and it would have been better to allege James Worldwide and Lee intended to induce Cadu and Groverman to act by disclosing some facts but concealing others.  But Cadu and Groverman alleged sufficient facts to constitute a cause of action for fraudulent concealment.  If James Worldwide and Lee really need more clarity, they can serve a few interrogatories.

> D.      *The Trial Court Erred in Sustaining the Demurrer to the Cause of Action for Aiding and Abetting Fraud*

"'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act.'" (*Chen v. PayPal, Inc.* (2021) 61 Cal.App.5th 559, 583; see *IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 653-654.)  "[L]iability for aiding and abetting depends on proof the defendant had actual knowledge of the specific primary wrong the defendant substantially assisted." (*Casey v. U.S. Bank Nat. Assn.* (2005)

17

127 Cal.App.4th 1138, 1145.) "'[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act.'" (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 823, fn. 10; see *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1475-1476.)

Cadu and Groverman alleged sufficient facts to constitute a cause of action for aiding and abetting fraud. First, they alleged FCO Genesis and Kim committed the primary wrong by fraudulently misrepresenting that FCO Genesis "was the direct importer of the Gloves," that the escrow account was "managed by and accessed by Lee only," and that the escrow payment "would immediately be returned to Mohawk upon request if [FCO Genesis] failed to deliver the Gloves." Second, they alleged James Worldwide and Lee knew that Kim made those representations and that the statements were false. Third, they alleged James Worldwide and Lee substantially assisted FCO Genesis and Kim in committing fraud by (1) posing as escrow agents and not disclosing or clarifying that parties other than James Worldwide and Lee would have access to the escrow account; (2) assuring Groverman that FCO Genesis could be trusted, while not disclosing the dispute between FCO Genesis and James Worldwide; (3) failing to return Mohawk's escrow payment when Mohawk asked for it; and (4) "help[ing] the M&W Defendants remove the Escrow Payment."

James Worldwide and Lee argue Cadu and Groverman did not sufficiently allege James Worldwide and Lee had "'knowledge of the object to be attained'" (*Casey v. U.S. Bank Nat. Assn.*,

18

*supra*, 127 Cal.App.4th at p. 1146, italics omitted) because Cadu and Groverman did not allege James Worldwide and Lee knew these facts about M&W's involvement in the fraudulent scheme: (1) M&W was the actual importer of the gloves; (2) FCO Genesis had agreed to buy medical supplies from M&W; (3) M&W had access to the escrow account; and (4) M&W withdrew Mohawk's deposit from the escrow account because FCO Genesis didn't pay M&W.  But Cadu and Groverman alleged sufficient facts to show James Worldwide and Lee knew about M&W's role.  They alleged that James Worldwide and Lee knew and concealed M&W was involved; that they never disclosed M&W, not FCO Genesis, "was in fact the direct importer of the Gloves"; and that the "Escrow Account was in fact a bank account that could be accessed by parties other than Lee."[2]  Cadu and Groverman also alleged James Worldwide and Lee helped M&W take Mohawk's money from the escrow account.  Cadu and Groverman may not have alleged James Worldwide and Lee knew every detail of FCO Genesis's plan, but they alleged more than simply James Worldwide and Lee "knew *something* fishy was going on." (*Casey*, at p. 1149; cf. *ibid.* [plaintiff failed to allege sufficient facts to state a cause of action for aiding and abetting breach of fiduciary duty where the plaintiffs alleged the defendant banks knew corporate officers and directors were "'involved in a criminal or dishonest and wrongful enterprise and were, at the very least, laundering money,'" but did not allege they were misappropriating corporate funds].)  Cadu and Groverman

---

[2]     Cadu and Groverman alleged these facts in the cause of action for fraudulent concealment, not the cause of action for aiding and abetting fraud, but the cause of action for aiding and abetting fraud incorporated the previous allegations.

19

sufficiently alleged James Worldwide and Lee had "actual knowledge of the specific primary wrong." (*Id*. at p. 1145; see *American Master Lease LLC v. Idanta Partners, Ltd*., *supra*, 225 Cal.App.4th at p. 1475.)

> E. *The Trial Court Erred in Sustaining the Demurrer to the Cause of Action for Intentional Interference with Prospective Economic Advantage*

"Intentional interference with prospective economic advantage has five elements: (1) the existence, between the plaintiff and some third party, of an economic relationship that contains the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentionally wrongful acts designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm proximately caused by the defendant's action." (*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.* (2017) 2 Cal.5th 505, 512.)[3]  To state a cause of action for intentional interference with prospective economic advantage, the plaintiff must allege the defendant "committed an independently wrongful act." (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1142.)  "'[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other

---

[3]      Cadu and Groverman labeled their cause of action "interference with prospective business advantage."  The same tort is "variously known as interference with 'prospective economic advantage,' 'prospective contractual relations,' or 'prospective economic relations.'" (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 378.)

20

determinable legal standard.'" (*Ibid*.; see *Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1159.)

In their cause of action for intentional interference with prospective economic advantage, Cadu and Groverman alleged that they had business relationships with Mohawk and other prospective buyers of PPE and that James Worldwide and Lee were aware of those relationships. Cadu and Groverman alleged James Worldwide and Lee "intentionally interfered" with those relationships through the same wrongful acts that formed the basis for their causes of action for fraud, negligent misrepresentation, fraudulent concealment, and aiding and abetting fraud: (1) telling Groverman that FCO Genesis "could be trusted and would follow-through on the deal," but concealing that James Worldwide and Lee were involved in a dispute with FCO Genesis; (2) falsely stating the escrow account was "overseen and accessible only by Lee," when in fact M&W had access to the account, and James Worldwide, Lee, and FCO Genesis intended to use Mohawk's payment "to further a side deal between [FCO Genesis] and M&W"; and (3) allowing M&W to take the money in the escrow account. Cadu and Groverman alleged the wrongful acts of James Worldwide and Lee caused Mohawk and other prospective buyers to end their relationships with Cadu and Groverman, costing them millions of dollars in lost future earnings. These allegations stated sufficient facts to constitute a cause of action for intentional interference with prospective economic advantage.

James Worldwide and Lee argue Cadu and Groverman's cause of action for intentional interference with prospective economic advantage failed because the conduct of James Worldwide and Lee did "not amount to an independently

21

wrongful act." However, as discussed, Cadu and Groverman alleged sufficient facts to constitute causes of action for fraud, negligent misrepresentation, fraudulent concealment, and aiding and abetting fraud, all of which are independently wrongful, based on the same conduct. (See *Ixchel Pharma, LLC v. Biogen, Inc.*, *supra*, 9 Cal.5th at p. 1142 [conduct that violates a "'common law . . . standard'" is independently wrongful]; *Korea Supply Co. v. Lockheed Martin Corp.*, *supra*, 29 Cal.4th at p. 1159 [same]; *Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 538 [same]; *Popescu v. Apple Inc.* (2016) 1 Cal.App.5th 39, 65 [plaintiff "alleged independently wrongful conduct . . . including . . . a scheme intending to defraud"], disapproved on another ground in *Ixchel*, at p. 1148; *Tri-Growth Centre City, Ltd. v. Silldorf, Burdman, Duignan & Eisenberg* (1989) 216 Cal.App.3d 1139, 1153-1154 [facts stating a cause of action for breach of fiduciary duty "support a cause of action against defendants for interfering with prospective economic advantage"].)

James Worldwide and Lee also argue their "alleged conduct was not the act that constituted the interference." They contend it was FCO Genesis's failure to deliver the gloves and M&W's withdrawal of the money that caused Cadu and Groverman's harm. But that FCO Genesis and M&W also interfered with Cadu and Groverman's prospective advantage does not mean James Worldwide and Lee did not. Cadu and Groverman alleged that James Worldwide and Lee induced them to participate in the transaction by concealing facts about their dispute with FCO Genesis, that James Worldwide and Lee intended to use Mohawk's payment to satisfy a separate obligation to FCO Genesis and M&W, and that James Worldwide and Lee

allowed M&W to take Mohawk's payment from the escrow account. These allegations were sufficient, at the pleading stage, to connect James Worldwide and Lee to the fraudulent scheme that disrupted Cadu and Groverman's relationships with buyers and sellers of PPE.

> F. *The Trial Court Did Not Err in Sustaining Without Leave To Amend the Demurrer to the Causes of Action for Negligence and Negligent Interference with Prospective Economic Advantage*

"To establish a cause of action for negligence, the plaintiff must show that the 'defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.'" (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 213; see *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 669.) Similarly, the "tort of *negligent* interference with economic relationship arises only when the defendant owes the plaintiff a duty of care." (*Stolz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1825; see *J'Aire Corp. v. Gregory* (1979) 24 Cal.3d 799, 803 ["Liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff or to a class of which the plaintiff is a member."]; *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 430 ["When negligent, yet disruptive, acts allegedly interfere with an economic relationship, the acts are deemed tortious only where there was an existing duty of care owed by the defendant to the plaintiff."]; see also *Carlin v. DairyAmerica, Inc.* (E.D. Cal. 2013) 978 F.Supp.2d 1103, 1116 ["Because the tort of negligent interference with prospective economic advantage is a form of

23

claim of the tort of negligence, a plaintiff must demonstrate the existence of a duty of care owed to the plaintiff by the defendant."].)

"Duty is not universal; not every defendant owes every plaintiff a duty of care.  A duty exists only if "'the plaintiff's interests are entitled to legal protection against the defendant's conduct.'"" (*Brown*, at p. 213; see *The Law Firm of Fox & Fox v. Chase Bank, N.A.* (2023) 95 Cal.App.5th 182, 193.)  "Whether a duty is owed is simply a shorthand way of phrasing what is the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct."  (*J'Aire Corp. v. Gregory, supra*, 24 Cal.3d at p. 803, internal quotation marks omitted.)

The trial court ruled Cadu and Groverman did not allege facts sufficient to establish James Worldwide and Lee owed Cadu and Groverman a duty of care.  The court stated that "in the absence of . . . contractual privity . . . the law does not intervene on those types of arms-length transactions.  It would be a chilling effect on business if that were the case."

An escrow holder "'has no general duty to police the affairs of its depositors'; rather, an escrow holder's obligations are 'limited to faithful compliance with [the depositors'] instructions.'" (*Summit Financial Holdings, Ltd. v. Continental Lawyers Title Co.* (2002) 27 Cal.4th 705, 711 (*Summit*); see *Vournas v. Fidelity Nat. Tit. Ins. Co.* (1999) 73 Cal.App.4th 668, 674 [the "primary duty owed by an escrow holder is to strictly and faithfully perform the instructions given to it by the parties to the escrow"].)  Cadu and Groverman invoke an exception to the general rule by arguing there was a "special relationship" among

24

the parties under the standard articulated by the Supreme Court in *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*).

In *Biakanja* the Supreme Court held a notary public who negligently prepared a will owed a duty of care to the intended beneficiary of the will, even though the parties were not in privity of contract. (*Biakanja*, *supra*, 49 Cal.2d. at p. 651.) The Supreme Court listed six factors for determining whether a defendant may be liable to a third person absent a contractual relationship: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the plaintiff's injury; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. (*Ibid.*) In concluding the notary public owed the plaintiff a duty of care, the Supreme Court stated, "the 'end and aim' of the transaction was to provide for the passing of" the decedent's estate to the plaintiff. (*Id.* at p. 650.)

In *Summit*, *supra*, 27 Cal.4th 705 the Supreme Court applied the *Biakanja* factors to an escrow transaction. In that case a borrower refinanced a loan, and the escrow company paid the original lender according to the escrow instructions. (*Summit*, at p. 708.) A different lender sued the escrow company, alleging the escrow company should have paid the assignee lender because the original lender had assigned the note to it and the escrow company knew about the assignment. (*Ibid.*) Neither the assignor lender nor the assignee lender was a party to the escrow. (*Ibid.*) The Supreme Court concluded only one of the six *Biakanja* factors, certainty of injury, weighed in favor of finding the escrow company owed the assignee lender a duty of care. The

Supreme Court held that the transaction was intended to assist the borrower and the new lender in closing a loan transaction and that "any impact that transaction may have had on [the assignee lender] was collateral to the primary purpose of the escrow." (*Id*. at p. 715.) The Supreme Court stated that it was not foreseeable the assignor lender would not disburse the funds to the assignee lender, that the escrow company followed the escrow instructions and therefore was not blameworthy, that policy considerations weighed in favor of encouraging escrow companies to follow escrow instructions, and that the assignee's injury was not caused by the escrow company paying the assignor lender but by the assignor's breach of its contractual obligation to the assignee. (*Id*. at pp. 715-716.)

Similarly, in *Alereza v. Chicago Title Co.* (2016) 6 Cal.App.5th 551 (*Alereza*) the court held an escrow company did not owe a third party a duty of care under the *Biakanja* factors. In *Alereza* an escrow company employee negligently listed the name of the insured (the purchaser of a gas station business) incorrectly when it secured a new certificate of insurance for the business. (*Id*. at p. 553.) That error caused the property's landlord to demand the plaintiff, the uncle of the purchaser, provide a personal guarantee. (*Id*. at p. 556.) The court concluded none of the *Biakanja* factors weighed in favor of finding the escrow company owed a duty of care to the plaintiff. (*Alereza*, at pp. 560-562.) The plaintiff was not a party to the escrow and the escrow instructions did not mention him. (*Id*. at p. 560.) Rejecting the plaintiff's assertion "he benefited from the transaction by the 'psychic and emotional reward' of helping his nephew," the court concluded that the escrow agreement was designed "only to complete a business transaction" between the

26

buyer and seller of the business and that any benefit to the plaintiff "was a collateral benefit of the escrow transaction." (*Ibid.*)  The court held that the escrow company could not foresee the plaintiff would provide a personal guarantee, that "several independent errors separated" the escrow company's negligence from "the ultimate financial losses" the plaintiff claimed, and that the escrow company was negligent but not morally blameworthy.  (*Id.* at p. 561.)  Finally, the court stated that, because escrow companies already face liability to parties to the escrow for any proximately caused damages, the policy of preventing future harm did not support imposing a new legal duty on escrow companies.  (*Ibid.*)

Whether James Worldwide and Lee owed Cadu and Groverman a duty of care under the *Biakanja* factors is a closer question than whether the defendants owed the plaintiffs a duty in *Summit* or *Alereza.*  Under the second factor, although it was foreseeable Cadu and Groverman would lose a commission if the transaction did not close, their other claimed damages—millions of dollars in lost future earnings—were less foreseeable.  The certainty-of-injury factor, the third, weighs in favor of finding a duty because Cadu and Groverman alleged they lost their commission on the FCO Genesis transaction and profits on future transactions.  Regarding the fifth *Biakanja* factor, moral blame, unlike the escrow agents in *Summit* and *Alereza*, James Worldwide and Lee allegedly engaged in fraud and did not follow the escrow instructions.  Therefore, they are more morally blameworthy than an escrow agent who follows escrow instructions but does so negligently.

The other *Biakanja* factors, however, weigh against finding a duty.  The first factor, whether the escrow transaction was

27

intended to affect or benefit Cadu and Groverman, does not support imposing a duty on James Worldwide and Lee; to the contrary, the escrow was intended to facilitate the sale of gloves by FCO Genesis to Mohawk. Like the plaintiffs in *Summit* and *Alereza*, Cadu and Groverman were not parties to the escrow, were not entitled to be paid from the escrow, and were not mentioned in the escrow agreement or instructions. Cadu and Groverman contend they satisfied the intend-to-benefit factor by alleging that "Kim represented to Groverman that Cadu stood to make 15-25 cents on each box of Gloves sold to Mohawk" and that "it was understood by all parties" that Cadu and Groverman "stood to benefit from the deal." But at most those allegations claim that James Worldwide and Lee knew Cadu and Groverman would earn a commission, making Cadu and Groverman incidental, not intended beneficiaries of the transaction. As in *Summit* and *Alereza*, the benefit to Cadu and Groverman as brokers was collateral to the purpose of the escrow. (See *Summit*, *supra*, 27 Cal.4th at p. 715; *Alereza, supra*, 6 Cal.App.5th at p. 560; cf. *The Law Firm of Fox & Fox v. Chase Bank, N.A., supra*, 95 Cal.App.5th at p. 188 [bank owed a law firm, "as an intended beneficiary of the blocked account order and acknowledgment, a duty to act with reasonable care in limiting distributions from the blocked account to those authorized by court order"]; *Business to Business Markets, Inc. v. Zurich Specialties London Limited* (2005) 135 Cal.App.4th 165, 171 [insurance broker owed a duty of care to a third party who was, "strictly speaking, not quite an intended beneficiary," but "close enough to being one that imposing duty . . . is within the spirit of *Biakanja*"].)

28

The remaining factors also weigh against finding a duty of care. Regarding the fourth factor, closeness between the defendants' conduct and the plaintiffs' injury, James Worldwide and Lee's allegedly negligent conduct—failing to prevent M&W from taking Mohawk's money from the escrow account and failing to return the money to Mohawk—had some connection to Cadu and Groverman's injury, but it was not the only cause; FCO Genesis's failure to send the gloves and M&W's removal of Mohawk's money from the escrow account played a significant role. Nor does the policy of preventing future harm, the sixth factor, support imposing a duty on James Worldwide and Lee. Escrow agents already owe fiduciary duties to parties to the escrow, and an escrow agent who fails to properly follow escrow instructions is liable to parties to the escrow for breach of contract. (See *Alereza, supra*, 6 Cal.App.5th at p. 561.)

Because Cadu and Groverman did not allege facts sufficient to support a special relationship giving rise to a duty of care, the trial court did not err in sustaining James Worldwide and Lee's demurrer to the causes of action for negligence and negligent interference with prospective economic advantage.[4] Cadu and

---

[4] To the extent the trial court ruled that, for the negligent misrepresentation cause of action, Cadu and Groverman had to allege James Worldwide and Lee owed them a duty of care under *Biakanja, supra*, 49 Cal.2d. 647, the court was mistaken. (See *Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 845 [a complaint that states a cause of action for fraud "necessarily sufficiently pleads the elements of . . . negligent misrepresentation"]; *Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 68 ["The law imposes a duty not to make negligent misrepresentations of fact."];

Groverman have not stated what additional facts they could allege to satisfy the *Biakanja* factors. Therefore, the trial court did not abuse its discretion in sustaining the demurrer to those causes of action without leave to amend.

G. *Cadu and Groverman Alleged Sufficient Facts To Constitute Stated Causes of Action Against James Worldwide*

James Worldwide argues that, even if Cadu and Groverman alleged sufficient facts to constitute causes of action against Lee, they did not allege sufficient facts to constitute a cause of action against it. They contend the escrow agreement, which was attached to the second amended complaint, "conclusively demonstrates" James Worldwide was not the escrow agent for the transaction because the agreement names Lee, not James Worldwide, as the escrow agent. But all that means is that James Worldwide may not have been a party to the escrow agreement. Cadu and Groverman did not assert a cause of action for breach of contract against James Worldwide. As discussed, Cadu and Groverman alleged sufficient facts to state causes of action against James Worldwide and Lee for interference with prospective economic advantage and various forms of fraud, regardless of whether James Worldwide was a party to the escrow agreement. Cadu and Groverman alleged that Lee was a manager of James Worldwide; that Lee told

---

*Blankenheim v. E. F. Hutton & Co.* (1990) 217 Cal.App.3d 1463, 1472-1473 ["negligent misrepresentation is included within the definition of fraud"]; see also *Sheen v. Wells Fargo Bank, N.A.* (2022) 12 Cal.5th 905, 943 ["'[n]egligent misrepresentation is a separate and distinct tort' from negligence"].)

30

Groverman that "James Worldwide, originally started by his parents, [had] a long history of conducting similar deals"; that James Worldwide and Lee had a dispute with FCO Genesis; and that FCO Genesis, James Worldwide, and Lee were looking for a new customer to purchase PPE to resolve the dispute, with the funds going to pay James Worldwide.  Those allegations were sufficient to raise an inference, which we accept as true for purposes of a demurrer, Lee was working on behalf of James Worldwide.

## DISPOSITION

The judgment is reversed. The trial court is directed to vacate its order sustaining the demurrer by James Worldwide and Lee to the second amended complaint without leave to amend, and to enter a new order overruling the demurrer to Cadu and Groverman's causes of action for intentional interference with prospective economic advantage, fraud, fraudulent concealment, negligent misrepresentation, and aiding and abetting fraud and sustaining the demurrer to the causes of action for negligence and negligent interference with prospective economic advantage without leave to amend. Cadu and Groverman are to recover their costs on appeal.


SEGAL, J.



We concur:



PERLUSS, P. J.



EVENSON, J.*

---

\*     Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.